500 A.2d 163

CLOVERLEAF DEVELOPMENT, INC. and Leonard E. Price and Dorothy J. Price, his wife, Appellants,

v.

HORIZON FINANCIAL F.A. Successor to Century Federal Savings and Loan Association and Gregor F. Meyer, Edward L. Flaherty, Jr. and Meyer and Flaherty, P.C., a professional corporation, Appellees.

Superior Court of Pennsylvania.

Argued April 10, 1985.

Filed Nov. 1, 1985.

Robert F. Hawk, Assistant District Attorney, Butler, for appellants.

Vincent J. Grogan, Pittsburgh, for appellees.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

In this appeal from an order sustaining preliminary objections in the nature of a demurrer to five of six counts of a complaint, we are asked to determine whether appellants have sufficiently pleaded causes of action for intentionally inflicted emotional distress and for intentionally interfering with prospective contractual relations. Before deciding these issues, however, we must first determine whether the order of the trial court was final and appealable.

On June 23, 1970, Cloverleaf Development, Inc., hereinafter "Cloverleaf," obtained a loan of $1,515,000.00 from Century Federal Savings and Loan Association, hereinafter "Century," who was the predecessor of Horizon Financial, F.A., hereinafter "Horizon." As security for the loan, Cloverleaf executed a note and delivered to Century a mortgage constituting a lien on an apartment complex in Moon Township, Allegheny County. The terms of the loan required Cloverleaf to repay the principal indebtedness in 25 years with interest at the rate of 7.75%. The note also contained a clause vesting an option in Century, in the event of default for two or more months, to demand an increased interest rate not to exceed 9.30%. When so increased, the new rate was to remain in effect until the loan was paid in full. In the event of prepayment, Cloverleaf was to become liable for a penalty in the amount of six percent of the balance being pre-paid.

After a default had occurred, Century made a demand in 1980 that Cloverleaf pay interest at the rate of 9.3% on the unpaid loan balance. Leonard E. Price, who was president of Cloverleaf, refused Century's demand. Century then proposed several amendments to the loan agreement. In a proposed, written modification, Century suggested an annu-

al interest rate of 13.75%, without any option to increase the same, and a reduced term of 38 months. Cloverleaf, through its attorney, rejected the offer to modify the loan agreement. Nevertheless, after September, 1981, Century's monthly statements included computations of interest at the rate of 13.75%. This increased each monthly payment by $2,000.00. Cloverleaf, allegedly because of inadvertence, paid the increased monthly statement without protest and without comment until March, 1982. Although it protested the increased interest rate thereafter, Cloverleaf nevertheless continued to make the increased monthly payments.

In February and March, 1982, Leonard Price received several offers to purchase his Cloverleaf stock. Attempts were made to obtain an agreement from Century to reduce the interest on the loan to the original 7.75%, but Century rejected all such requests and demanded an 18% balloon mortgage from any purchaser who assumed the mortgage and continued to use its money. A Century vice president allegedly said to one of the prospective buyers: "Nobody is going to assume Price's mortgage if I have anything to do about it. I know that Price cannot afford to continue making the extra $2,000.00 a month payments and when he misses the next payment, we are going to take over the whole property and let Price swing." All requests to allow an assumption of the mortgage at a 7.75% rate of interest were rejected.

The apartment complex was thereafter sold on a cash basis but at a price lower than that which had been offered by buyers who had been interested in assuming the existing mortgage. When Century computed and submitted a mortgage payoff figure, it included a prepayment penalty of six percent. This was pursuant to the provisions of the original loan agreement which, however, had been omitted from the modification agreement proposed by Centruy and never accepted by Cloverleaf. The payoff figure also contained a computation of interest at the rate of 13.75% as contained in the proposed but unaccepted modification agreement. In

August, 1982, however, after the sale had been finalized, Century agreed to a reduced rate of interest for payoff purposes.

On May 23, 1983, Cloverleaf and Price filed a complaint containing six counts against Horizon, the corporate successor to Century. The first count was in assumpsit and contained averments that Century had breached its contract by unilaterally raising the interest rate to 13.75 percent or by otherwise charging interest at unauthorized rates. The second count alleged a wrongful withholding of funds referred to in the first count and asserted a claim for punitive damages. The third count contained a claim for damages allegedly caused by Century's wrongful interference in negotiations between Cloverleaf and third parties for the sale of the apartment complex. This Century did, according to the averments of the complaint, "by demanding arbitrary and outrageous financing conditions" of anyone who would assume the mortgage. The final three counts of the complaint attempted to state causes of action for the intentional infliction of emotional distress. It was alleged that Century and also its attorneys had intentionally inflicted emotional distress by raising the interest rates on the mortgage, by proposing harsh repayment terms upon potential buyers interested in continuing the use of Century's money, and in otherwise inflicting emotional distress upon Price and his wife. In response to preliminary objections in the nature of a demurrer, the trial court dismissed all but the first count of the complaint. This appeal followed.

■ The first issue to be resolved is whether appellants are properly before this Court. An appeal will lie only from a final order unless otherwise permitted by statute. "A final order is usually one which ends the litigation or, alternatively, disposes of the entire case.... 'Conversely, an order is interlocutory and not final unless it effectively puts the litigant "out of court."'" *Praisner v. Stocker,* 313 Pa.Super. 332, 336–337, 459 A.2d 1255, 1258 (1983) (citations omitted), quoting *Giannini v. Foy,* 279 Pa.Super. 553, 556, 421 A.2d 338, 339 (1980). See also: *Pugar v.*

*Greco,* 483 Pa. 68, 72–73, 394 A.2d 542, 544–545 (1978); 42 Pa.C.S. § 742. "As a general rule, an order dismissing some but not all counts of a multi-count complaint is interlocutory and not appealable." *Praisner v. Stocker, supra,* 313 Pa.Super. at 337, 459 A.2d at 1258. This is so because in most such instances "the plaintiff is not out of court and is not precluded from presenting the merits of his cause of action." *Id.,* 313 Pa.Superior Ct. at 338, 459 A.2d at 1258. However, the general rule is not without exceptions. Where the dismissal of one count or several counts of a multi-count complaint has the effect of precluding the plaintiff from pursuing the merits of separate and distinct causes of action, the order sustaining preliminary objections is then final, not interlocutory, with respect to those causes of action dismissed. The plaintiff is "out of court" with respect thereto. *Id.,* 313 Pa.Superior Ct. at 339, 459 A.2d at 1258–1259. This is to be distinguished from the situation in which separate counts have been used to state alternate theories to support recovery on the same cause of action. In such cases, the dismissal of one count does not prevent the plaintiff from proceeding to a determination of the underlying cause of action. *Id.,* 313 Pa.Superior Ct. at 341, 459 A.2d at 1260. Similarly, "where one of several counts seeks to recover punitive damages in a complaint alleging breach of contract, a dismissal of that count does not put the plaintiff out of court on his underlying cause of action. Only if he is successful in his cause of action for breach of contract does the measure of damages become relevant." *Id.*

In the instant case, the first count of the complaint, containing a cause of action for alleged breach of contract, awaits disposition in the trial court. The second count is merely a restatement of the first count and includes a claim for punitive damages. The averments of this count are that Century unlawfully withheld interest collected in breach of contract as alleged in the first count. Appellants are not "out of court" on their cause of action for breach of contract; and, therefore, the trial court's rejection of their

alternate theory and the claim for punitive damages contained in the second count was interlocutory. Such an order would not ordinarily be appealable. This Court will not review or express an advisory opinion regarding a ruling of the trial court which does not determine finally the cause of action for breach of contract alleged by appellants. We will not suggest which theory or theories appellants should pursue in the trial court or what damages they may recover in their undecided action for breach of contract.

■ The dismissal of Count No. 3 was final. Appellants are out of court on their claim for damages because of Century's alleged interference with Cloverleaf's negotiations with third party, potential buyers. Therefore, we will review the averments in Count No. 3 to determine whether they are sufficient to state a cause of action.

■ To state a cause of action for interfering with prospective contractual relations, a complaint must allege (1) a prospective contractual relationship between the plaintiff and third parties, (2) a purpose or intent to harm the plaintiff by preventing the relationship from accruing, (3) the absence of privilege or justification on the part of the defendant, and (4) the occurrence of actual harm or damage to the plaintiff as a result of the defendant's conduct. *Gordon v. Lancaster Osteopathic Hospital Association, Inc.*, 340 Pa.Super. 253, 267, 489 A.2d 1364, 1370 (1985).

■ The averments of the complaint were that Price had agreed to sell his stock in Cloverleaf to persons who were interested in assuming the mortgage at an interest rate of 7.75%. It was also alleged that Wise Business Forms, Inc., another potential buyer, was prepared to sign an agreement to buy if financing would be continued at the rate of 7.75%. Appellants contended that Century had interfered maliciously by demanding a higher interest rate and had thereby knowingly and intentionally destroyed these potential sales. These averments were sufficient to allege a reasonable likelihood or probability that an anticipated business arrangement would have been consummated.

*Behrend v. Bell Telephone Co.*, 242 Pa.Super. 47, 60–61, 363 A.2d 1152, 1159 (1976), *reversed on other grounds,* 473 Pa. 320, 374 A.2d 536 (1977). The complaint also alleged that Century had acted to inflict harm on Cloverleaf. See: *Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Division,* 281 Pa.Super. 560, 581 n. 11, 422 A.2d 611, 622 n. 11 (1980). However, it is eminently clear from the averments of the complaint that Century was justified in acting as it did to protect its own financial interest. Its conduct, therefore, was not improper and will not support a cause of action for interfering with potential contractual relationships.

The " 'absence of privilege or justification on the part of the defendant,' 'is merely another way of stating that the defendant's conduct must be improper." *Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Division, supra,* 281 Pa.Superior Ct. at 581 n. 11, 422 A.2d at 622 n. 11. Where a defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff, a line must be drawn and interests must be evaluated. " ' "This process results in according or denying a privilege which, in turn, determines liability." What is or is not privileged conduct ... is not susceptible of precise definition.' " *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 432–433, 393 A.2d 1175, 1183–1184 (1978), quoting *Glenn v. Point Park College,* 441 Pa. 474, 482, 272 A.2d 895, 899 (1971). Interferences "which 'are sanctioned by the "rules of the game which society has adopted," ' " are considered proper. *Id.* 482 Pa. at 433, 393 A.2d at 1184. The factors to be considered in determining whether conduct is "improper" are listed in the Restatement (Second) of Torts, Section 767:

(a) The nature of the actor's conduct,

(b) The actor's motive,

(c) The interests of the other with which the actor's conduct interferes,

(d) The interests sought to be advanced by the actor,

 (e) The proximity or remoteness of the actor's conduct to the interference and

 (f) The relations between the parties.

See: *Adler, Barish, Daniels, Levin and Creskoff v. Espstein, supra,* 482 Pa. at 433 & n. 17, 393 A.2d at 1184 & n. 17 (footnote omitted).

■ The mortgage which was intended to provide security for moneys loaned to Cloverleaf contained a specific provision that the loan, in the event of a transfer of the real estate, would be deemed to be in default and the unpaid balance would thereupon become due and payable. A default of this nature could be cured only if Century were to waive the "due-on-sale clause." However, such a waiver, according to the terms of the mortgage, "may require as a condition ... a modification in the rate of interest and/or charge in the monthly principal payments, [and] the execution of a personal note providing for the assumption of the mortgage by the transferee *upon such terms and form as is acceptable to the mortgagee."* (emphasis added). A due-on-sale clause in a mortgage is a legitimate contractual stipulation and must be construed in accordance with the intention of the parties to the same extent as other contractual provisions. *Bank of Pennsylvania v. G/N Enterprises,* 316 Pa.Super. 367, 373–374, 463 A.2d 4, 7 (1983).

According to the clear language of the mortgage in this case, Century had the right to demand an increased rate of interest from one who would assume the mortgage and also the right to amend the schedule of payments according to which the loan was to be repaid. In order to protect its rights under the mortgage and advance its legitimate business interests, Century could notify potential buyers of the real estate that it intended to declare the mortgage in default rather than have it assumed at the original rate of interest. It cannot be said that Century acted improperly so as to give rise to a cause of action for intentional interference with prospective contractual relations as envisioned by Restatement (Second) of Torts § 767. The trial court correctly dismissed the third count of the complaint.

The fourth, fifth and sixth counts of the complaint were also dismissed properly. These counts averred that Century and its attorneys had intentionally inflicted emotional distress upon Leonard Price and his wife by their conduct in demanding higher interest rates from potential purchasers who wished to assume the mortgage. These three counts averred a separate cause of action. See: *Papieves v. Kelly*, 437 Pa. 373, 378–379, 263 A.2d 118, 121 (1970). When the trial court sustained preliminary objections in the nature of a demurrer to all three counts, it determined finally that the Prices could not recover on their stated cause of action.

 Intentional infliction of emotional distress is an actionable wrong when one intentionally and recklessly, by extreme and outrageous conduct, causes severe emotional distress to another. Liability can be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 381, 492 A.2d 1382, 1386 (1985); *Bartanus v. Lis*, 332 Pa.Super. 48, 59–60, 480 A.2d 1178, 1184 (1984). As we have already observed, when Century insisted upon higher interest rates in exchange for an assumption of the mortgage, it was acting within rights conferred by the provisions of the mortgage. Its conduct, therefore, was not outrageous. Cf. *Thompson v. Sikov*, 340 Pa.Super. 382, 490 A.2d 472 (1985). If Century improperly raised Cloverleaf's mortgage interest rate, that may have been a breach of the contract. However, an attempt to increase the interest was not such outrageous conduct, so extreme and so excessive of decency, that it would support a separate cause of action for intentionally inflicted emotional distress. Similarly, the complaint fails to allege conduct on the part of Century's attorneys sufficient to support such a cause of action against them. Even if the advice which they gave their client, Century, was incorrect, this fact alone would not give rise to a cause of

action in favor of appellants. See: *Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22 (1984).

That portion of the order dismissing the third, fourth, fifth and sixth counts of the complaint is affirmed. We express no opinion regarding the cause of action for breach of contract or the damages recoverable therein.