532 A.2d 873

**Frank ZARNECKI, Appellee,**

v.

**Doreen SHEPEGI, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1986.

Filed Oct. 13, 1987.

Craig A. Markham, Erie, for appellant.

David G. Ridge, Erie, for appellee.

Before CIRILLO, President Judge, and ROWLEY, OLSZEWSKI, DEL SOLE, MONTEMURO, BECK, TAMILIA, KELLY and POPOVICH, JJ.

KELLY, Judge:

In this residential mortgage foreclosure action, defendant, Doreen Shepegi, appeals a pretrial order which precludes her from asserting that the signature on the mortgage instrument is a forgery. The lower court found that the doctrine of collateral estoppel barred defendant from presenting this defense. A panel of this Court assigned to

hear argument certified the appeal to the Court *en banc* to determine: (1) whether the order of the court below is final and immediately appealable; and (2) whether the lower court erred in entering the order. After careful consideration, we conclude that the order appealed from is final and the appeal is properly before us; we further find that the court below correctly held that presentation of the forgery defense was barred by the doctrine of collateral estoppel. Accordingly, we affirm.

## I. Appealability

 The order appealed from states that "[i]t ... is deemed established should a trial be necessary on this matter, that defendant did sign the mortgage instrument in question and that her signature is authentic." Before turning to the question of whether the trial court erred in entering this order, we must first determine whether the appeal is properly before us. The Judicial Code provides:

> The Superior Court shall have exclusive appellate jurisdiction of all appeals from *final orders* of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

42 Pa.C.S.A. § 742. (Emphasis added).

A final order has been described as "one which usually ends the litigation, or alternatively, disposes of the entire case." *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978); *Praisner v. Stocker*, 313 Pa.Super. 332, 336–7, 459 A.2d 1255, 1258 (1983). Additionally, if the practical consequence of the trial court's order is to effectively put a defendant "out of court," the order will be treated as final. *Ventura v. Skylark Motel, Inc.*, 431 Pa. 459, 463, 246 A.2d 353, 355 (1968). An order does not put a party "out of court" unless it precludes proof of facts at trial, which if determined in favor of the pleader, would provide him with a complete defense to the action. *Posternack v. American*

*Casualty Co. of Reading,* 421 Pa. 21, 23–4, 218 A.2d 350 (1966); *Ventura, supra,* 246 A.2d at 355.

In *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975), the Pennsylvania Supreme Court stated:

> Whether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. We follow the reasoning of the United States Supreme Court that a finding of finality must be the result of a practical rather than a technical construction. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

In *Posternack v. American Casualty Co. of Reading, supra,* the Supreme Court determined that a pretrial order denying a party leave to amend an answer so as to assert a new affirmative defense constituted a final order for purposes of appeal:

> The order is not interlocutory, and the motion to quash will be overruled. The new defense proposed is affirmative in nature and must be pleaded, otherwise it is waived. See, Pa.R.C.P. 1030, 1032, and *Lang v. Recht,* 171 Pa.Super. 605, 91 A.2d 313 (1952). *The order involved effectively precludes proof at trial of what might possibly be a complete defense* to the cause sued upon. *As to this defense, at least, the order appealed from puts the defendant 'out of court.' It is, therefore, an appealable order. See Cohen v. Beneficial Industrial Loan Corp.* [supra] and *Bell v. Benefic. Consumer Corp.,* 465 Pa. 225, 348 A.2d 734 (1975).

218 A.2d at 351. (Emphasis added). Subsequent cases have followed the rule of *Posternack,* holding that an order precluding a defendant from presenting its affirmative defenses or refusing to allow evidence of a possibly meritorious defense is a final and appealable order. *Pennsylvania Turnpike Commission v. Atlantic Richfield Co.,* 482 Pa.

615, 394 A.2d 491 (1978); *Commonwealth of Pennsylvania, Department of Environmental Resources v. Wheeling–Pittsburgh Steel Corp.,* 473 Pa. 432, 375 A.2d 320 (1977) *cert. denied* 434 U.S. 969, 98 S.Ct. 515, 54 L.Ed. 456 (1977); *Brunetti v. Southeastern Pennsylvania Transportation Authority,* 329 Pa.Super. 477, 478 A.2d 889 (1984); *Roman v. Pearlstein,* 329 Pa.Super. 392, 478 A.2d 845 (1984); *Sechler v. Ensign-Bickford Co.,* 322 Pa.Super. 162, 469 A.2d 233 (1983).

Appellee argues that a recent panel decision of this Court in *Elderkin, Martin, Kelly, Messina & Zamboldi v. Sedney,* 354 Pa.Super. 253, 511 A.2d 858 (1986), requires us to quash the instant appeal as interlocutory. *Elderkin* involved an appeal from a sanctions order which precluded the defendants from entering any evidence in their own defense or from opposing the claims of the plaintiff. The panel held that the order was interlocutory and the appeal premature. In reaching this conclusion, the panel applied the three-part appealability test set forth in *Cohen v. Beneficial Industrial Loan Corp., supra,* and adopted by the Pennsylvania Supreme Court in *Bell v. Beneficial Consumer Discount Company, supra.* The Court in *Elderkin* stated:

> Under Cohen, an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. Id. 337 U.S. at 546, 59 S.Ct. at 1226, 93 L.Ed. at 536.

511 A.2d at 859, *quoting Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985). The panel in *Elderkin* found that the order appealed from did not satisfy the third prong of the *Cohen* test, since the question of the propriety of the court's order would not be irreparably lost if review were postponed until final judgment in the case. *Elderkin,* 511 A.2d at 860.

The *Elderkin* case does not require us to quash the instant appeal. This Court, sitting *en banc*, recently reexamined the appealability question and expressly disapproved of the suggestion made in *Elderkin, supra,* that the appropriate test to be applied in determining finality is the three-prong *Cohen* test. In *Fidelity Bank v. Duden,* 361 Pa.Super. 124, 521 A.2d 958 (1987), we stated:

> ... The *Cohen* test has nothing to do with determining 'finality.' If an order adjudicates an action finally, it is appealable. Conversely, if the order does not determine the action finally, it is interlocutory and generally nonappealable. ... *Cohen* created an exception to the rule allowing appeals solely from final orders.... It has application only to orders which are interlocutory.

> \* \* \* \* \* \*

> The suggestion made in *Elderkin, Martin, Kelly, Messina & Zamboldi v. Sedney,* [supra] that because of *Fried,* 'the appropriate test to be applied in determining finality is the three prong *Cohen* test,' is disapproved. According to long-standing precedent, *an order is final where it puts a litigant out of court or otherwise terminates the litigation by precluding a party from presenting the merits of a claim or defense to the trial court. Cohen,* to repeat, has nothing to do with determining finality; it has application only to orders which admittedly are interlocutory but which are collateral to and separable from the main action.

521 A.2d at 960 (emphasis added) (citations omitted).[1]

The order appealed from in the instant case precluded defendant from presenting a possibly meritorious and com-

1. *Elderkin* involved a pre-trial sanctions order which precluded the defendants from entering any evidence in their own defense or from opposing the claims of the plaintiff. Our Supreme Court recently held that a pre-trial sanctions order which strikes a defendant's New Matter is interlocutory. *Bruno v. Elitzky,* 515 Pa. 47, 526 A.2d 781 (1987). The result in *Elderkin,* quashing the appeal, is consistent with that reached by the Supreme Court in *Bruno;* we note that both Judge Del Sole in *Elderkin* and Mr. Justice Papadakos in *Bruno* emphasize the inevitable delays which result from allowing such appeals. *See* Pines, Pennsylvania Appellate Practice: Procedural Requirements and

plete defense in the mortgage foreclosure action. As the order put defendant "out of court," at least as to this defense, it is a final and appealable order. *See Posternack, supra.* The appeal by defendant, taken from a final and appealable order, is properly before this Court for review.

## II. Merits of the Appeal

 The facts of this case may be briefly summarized as follows. In May 1977, the defendant became the sole record title owner of the residential property which is the subject of the instant mortgage foreclosure action. The parties agree that the property was purchased through the joint efforts of the plaintiff and defendant. Plaintiff claims that in consideration for a loan he made to defendant, defendant executed and delivered a mortgage and a promissory note in the amount of $44,000. Defendant denies this claim, stating that at plaintiff's request she executed a will, naming plaintiff as sole beneficiary, and that she pledged future payments to be obtained from her separately owned income property.

the Vagaries of Jurisdiction, 91 Dick.L.Rev. 55, 58 n. 6 (1986) (compiling statistics demonstrating magnitude of Pennsylvania appellate courts' work loads). We do not today find it necessary to reach the question whether, post-*Bruno*, the *Cohen* collateral order test is properly applied in determining the appealability of a sanctions order precluding defendant from presenting affirmative defenses.

The *Bruno* case does not require a result contrary to that reached in the instant appeal. The Supreme Court expressly limited its holding to cases where the order precluding defendants from presenting certain defenses was entered as a pre-trial sanction; *Bruno* did not affect the viability of previous caselaw regarding the appealability of orders which, on the substantive merits, declare that a party may not present certain defenses:

> Mr. Justice Hutchinson has entered a dissent groping with the viability of *Grotta v. La Boccetta,* 425 Pa. 620, 230 A.2d 206 (1967), which dealt with the substantive merits of an affirmative defense. By contrast, disposition of the case under review is based on the issue of a sanction order for failure to respond to interrogatories. This qualitative difference clearly distinguishes the two cases.

515 Pa. 47, 50 n. 1, 526 A.2d 781, 782 n. 1. In the case at bar, the order appealed from, entered on the substantive merits, held that defendant was collaterally estopped from presenting a forgery defense. Thus, *Bruno* is inapplicable and does not affect our disposition of this appeal.

On August 13, 1980, the relationship between the parties apparently having soured, plaintiff confessed judgment against defendant for $44,000, in accordance with the terms of the purported promissory note. Defendant filed a petition to open the judgment on October 30, 1980, alleging that the signature appearing on the promissory note was a forgery. The parties agreed that they would be bound by the decision of a neutral handwriting expert, chosen by the court, as to the authenticity of the signature appearing on the promissory note.

Several documents were submitted to the handwriting expert, including samples of defendant's actual signature. However, for reasons which are not apparent of record, the promissory note in question was not among the documents submitted. In a report dated March 15, 1983, the expert witness concluded that the signature *on the mortgage* was that of the defendant. On April 27, 1983, the court denied defendant's petition to open the confessed judgment. The court did not issue an opinion explaining its decision, and no appeal was filed.

On January 9, 1984, plaintiff instituted the instant mortgage foreclosure action in accordance with the terms of the disputed mortgage. In her answer, defendant alleged that she did not sign the mortgage instrument, or that if she did sign it, her signature was fraudulently obtained. On January 31, 1985, plaintiff filed a motion for summary judgment, contending that the principle of *res judicata* prevented defendant from asserting the defense that the mortgage signature was not her own. In an opinion and order dated August 14, 1985, the court below denied the summary judgment motion, but held that, because of the doctrine of collateral estoppel, it "is deemed established should a trial be necessary on this matter, that defendant did sign the mortgage instrument in question and that her signature is authentic." (Order of August 14, 1985). The order was reduced to judgment, and on September 4, 1985, defendant filed a notice of appeal to this Court.

In his motion for summary judgment, the plaintiff asserted that the doctrine of *res judicata* barred relitigation of the authenticity question. The doctrine of *res judicata* "is based on public policy and seeks to prevent an individual from being vexed twice for the same cause." *In re Estate of R.L.L.*, 487 Pa. 223, 228 n. 7, 409 A.2d 321, 323 n. 7 (1979).

> The purposes of the rule are the protection of litigants from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through prevention of needless litigation. *Nemo debet bis vexari pro una et eadem cause; interest reipublicae res judicatas non rescindi.* Finality of litigation is essential so that parties may rely on judgments in ordering their private affairs and so that the moral force of court judgments will not be undermined.

*Clark v. Troutman*, 509 Pa. 336, 340, 502 A.2d 137, 139 (1985). The doctrine holds that "a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action." *Keystone Building Corp. v. Lincoln Savings and Loan Assn.*, 468 Pa. 85, 91, 360 A.2d 191, 195 (1976), *citing Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 395, 100 A.2d 595, 598 (1953). In order for the doctrine of *res judicata* to prevail, "there must be concurrence of four conditions: (1) identity of issues, (2) identity of causes of action, (3) identity of persons and parties to the action, and (4) identity of the quality or capacity of the parties suing or sued." *In re Estate of R.L.L., supra,* 487 Pa. 228 n. 7, 409 A.2d 321, 323 n. 7; *Safeguard Mutual Insurance Company v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975); *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 232, 464 A.2d 1313, 1316 (1983).

The lower court correctly rejected plaintiff's claim that the defense of forgery was barred by the doctrine of *res judicata.* The first cause of action was founded upon the terms of a promissory note, while the second is based upon

a mortgage instrument. Thus, the second prerequisite for application of *res judicata,* identity of causes of action, is not present. The court below properly held that the doctrine of *res judicata* is inapplicable to the instant case.

The lower court relied upon the principle of collateral estoppel in holding that defendant could not attempt to prove that the signature on the mortgage instrument was not her own. According to the rule of collateral estoppel or issue preclusion, when an issue of law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the same parties, whether on the same or a different claim. Restatement (Second) of Judgments § 27 (1982); *Clark v. Troutman, supra,* 509 Pa. at 341, 502 A.2d at 139. "Unlike merger and bar (res judicata), which are applicable only when the same cause of action is asserted, collateral estoppel may apply in any subsequent litigation. On the other hand, collateral estoppel is applicable only to essential issues of fact which have been actually litigated." *In re Estate of R.L.L., supra,* 487 Pa. at 228 n. 8, 409 A.2d at 323–4 n. 8. *Accord: Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975).

> [A] plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in the question in a prior action.

*In re Estate of R.L.L., supra,* 487 Pa. at 228 n. 8, 409 A.2d at 323–4 n. 8, *quoting Safeguard Mutual Insurance Company v. Williams, supra,* 345 A.2d at 668; *Gulentz v. Schanno Transportation, Inc.,* 355 Pa.Super. 302, 308, 513 A.2d 440, 443 (1986); *Derry Township School District v. Day & Zimmerman, Inc.,* 345 Pa.Super. 487, 491, 498 A.2d

928, 930 (1985); *Matson v. Housing Authority of the City of Pittsburgh,* 326 Pa.Super. 109, 112, 473 A.2d 632, 634 (1984).

Applying these prerequisites to the instant case, it is evident that two of the four factors necessary for application of the principle of collateral estoppel are clearly present. The actions involve identical parties, and the first action resulted in a final judgment on the merits.[2] Two of the four factors, however, merit closer examination. First, we must determine whether the issue decided in the first case was the same as that which was found to be barred: the authenticity of the signature on the mortgage instrument. Second, we must decide whether the defendant had a full and fair opportunity to litigate this issue in the first case. As stated in *Keystone Building Corporation v. Lincoln Savings & Loan Association, supra:*

> [W]here the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, *when it is sought to apply the estoppel of a judgment ... the inquiry must always be as to the point or question actually litigated or determined in the original action; not what might have been thus litigated and determined.*

360 A.2d at 195 (emphasis added), *quoting Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352–53, 24 L.Ed. 195 (1976); *U.S. v. International Building Company,* 345 U.S. 502, 504–5, 73 S.Ct. 807, 808–09, 97 L.Ed. 1182 (1953).

The authenticity question arose in the first case in the context of a petition to open a confessed judgment. In order for such a petition to be granted, the petitioner must allege a meritorious defense and present sufficient evidence of that defense to require submission of the issue to a jury.

---

**2.** The record in the original case has been made a part of the record in this appeal.

*See First Seneca Bank & Trust Company v. Laurel Mountain Development Corporation,* 506 Pa. 439, 485 A.2d 1086 (1984). In the first action, defendant's petition to open alleged that the signature appearing on the promissory note was not her own, and that she therefore had a meritorious defense to the underlying action. Depositions were taken, and the parties soon focused upon the authenticity of the mortgage instrument.[3] The parties agreed to abide by the report of the expert, who examined the mortgage and determined that the signature on the mortgage was that of the defendant. Based upon this expert's report, the court denied defendant's petition to open the confessed judgment.

We must first decide whether the issue of the authenticity of the signature appearing on the mortgage instrument was actually litigated in the first action. As is often stated, the issue litigated must have been essential to the judgment for the principle of collateral estoppel to apply. *See Schubach v. Silver, supra;* Restatement (Second) of Judgments § 27. Comment j to Section 27 of the Restatement, entitled "[d]eterminations essential to the judgment," provides further guidance:

> The appropriate question, then, is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties in a subsequent action, unless there is a basis for an exception under § 28.

The issue of the authenticity of the mortgage signature was clearly recognized by the parties as important. (*See* Request for Admissions to Defendant, Interrogatories to Defendant, and Plaintiff's Pre–Trial Narrative). Inherent in the court's denial of the petition to open is the finding that the signature on the mortgage was authentic, and that sufficient evidence of the forgery defense was not present-

---

**3.** As the lower court observed, a promissory note is commonly signed concurrently with a mortgage instrument.

ed so as to require submission of the question to the jury.[4] The issue was actually litigated, and its determination was essential to the court's decision to deny the opening of the confessed judgment.

Furthermore, the record reveals that defendant had a full and fair opportunity to litigate the issue in question. Although a clear explanation for the submission of the mortgage to the handwriting expert, rather than the promissory note, is not apparent from the record, it is clear that defendant made no objection to the records submitted to the expert. Additionally, it is significant that defendant did not take an appeal from the first court's denial of her petition to open the judgment. Defendant had ample opportunity to question the finding that the signature on the mortgage was her own, yet she failed to do so. She may not now attempt to do so.

The trial court did not abuse its discretion in holding that the principle of collateral estoppel bars defendant from presenting a forgery defense. Of course, defendant may present any other defenses, including her claim that the signature was fraudulently obtained.

Accordingly, the order appealed from is affirmed.

POPOVICH, J., concurs in the result.

DEL SOLE, J., files a dissenting opinion with BECK, J., joining.

MONTEMURO, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

The Majority in its proposed opinion in this case embarks upon the sea of "final and appealable orders" a sea that is

---

**4.** The language of the order denying the petition to open confessed judgment clearly indicates that the question of the authenticity of the mortgage instrument was necessary to the court's decision:

AND NOW, to wit, this 27th day of April, 1983, pursuant to the parties' stipulation concerning the expert, James D. King, and based on the March 15, 1983 opinion [of the expert], it is hereby ORDERED, ADJUDGED and DECREED, that Defendant's Motion to Open Judgment is hereby DENIED. (s/Jess S. Jiuliante, Judge).

unchartered, dark and dangerous. Unfortunately, while the Majority seeks to allow Appellant to arrive at the shore of jurisdiction in this court, it has, in my view, been sunk on the reef of inaccurate analysis.

Frank Zarnecki filed a mortgage foreclosure action against Doreen Shepegi based upon an underlying instrument. Ms. Shepegi filed an answer, new matter and counterclaim to which a reply to the counterclaim and new matter were filed by Mr. Zarnecki. Various discovery matters were undertaken and on January 31, 1985, the plaintiff filed a motion for summary judgment. This was responded to by the defendant and subsequently considered by the trial court. In a comprehensive opinion, filed by the Honorable Frederick P. Anthony, a partial summary judgment was entered on behalf of the plaintiff and against the defendant determining that the defendant's signature on the underlying instruments was not forged. The trial court's determination was based upon the doctrine of collateral estoppel since this issue had been raised in a previous action between the same parties on the same instrument and had been finally decided against the defendant.

On September 4, 1985, the defendant filed an appeal to this court from the partial summary judgment entered by the trial court. It is now 1987 and this case is still pending in the appellate courts. This case demonstrates the error of our ways in permitting appeals from interlocutory non-litigation ending orders entered at the trial court level.

My dispute with my colleagues in the Majority is in their analysis of the appealability of this order. Certainly, the Majority's citation of 42 Pa.C.S. § 742, which vests this court with appellate jurisdiction from final orders is correct. The definition of a final order as "one which usually ends the litigation, or alternatively, disposes of the entire case" *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978) is additionally correct. The Majority errs, however, when it continues with its analysis. The Majority would characterize as final and appealable an order which prevents a party from introducing evidence on a particular point during the

trial, reasoning that the party is effectively "out of court" on that particular point. Admittedly, there is some support for this general proposition but it is found in cases arising from the pleading stage where a party has been precluded from raising a defense, a counterclaim or a reply thereto.

Here a partial summary judgment was entered based upon the trial court's determination that no issue of fact existed and, therefore, the matter could be disposed of by a judicial determination. The cases are numerous which hold that partial summary judgments, when granted in the course of litigation are not subject to appeal or review until the litigation ends. This is not an order that precluded the defendant from presenting an affirmative defense. This is an order which determined that no question of fact existed and that the law on an issue was clear.

However, while I disagree with the majority's analysis and certainly its characterization of the order appealed from as a "pre-trial order" I must also call attention to what, in my view, is an area of the law that needs to be re-examined.

An order dismissing various counts in a multi-count complaint, an order refusing to allow the amendment of an answer, new matter or counterclaim, an order granting partial summary judgment, does not result in a litigant being "out of court". Rather, those orders postpone the litigant's right to have the issue resolved until a later time.

I would point out that I believe the doctrine contained in *Praisner v. Stocker,* 313 Pa.Super. 332, 336–7, 459 A.2d 1255, 1258 (1983) and *Cloverleaf Development Inc. v. Horizon Financial F.A.,* 347 Pa.Super. 75, 500 A.2d 163 (1985) should be reexamined.

In my view, the better practice would be to disallow appeals from any order, which is entered during the course of litigation at the trial level, until a party has been totally dismissed from a case or the case has ended for all purposes at the trial court level. The only exceptions to this rule should be those enumerated in Pa.R.A.P. 311 or where it is clearly established that the postponement of review would cause the claimed right to be irrevocably lost. *See*

*Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734, 735 (1975).

I realize that there are those who would argue, as was done in *Praisner,* that the dismissal of a count in a complaint, which is not related to other counts contained in the complaint, is the dismissal of a cause of action and, therefore, is appealable. It is argued that this conclusion is warranted since had the claim, which was dismissed, been presented in a separate and distinct complaint it would have been appealable. I understand and accept this argument but not the conclusion that the dismissed claim should be appealable while the remaining counts of the complaint are viable. I would point out that it was the individual litigants choice to bring all the issues in the same complaint. Having so chosen, the litigant must bear the risk that if some of the causes of action alleged in the multi-count complaint are dismissed, review will be postponed until the remaining counts have reached a final disposition. To find otherwise frustrates and delays the administration of justice, as is evident in the case *sub judice* which, at the time of this opinion, has been delayed almost two years.

The present state of the law in this area is confusing to say the least. Our appellate courts have held that the failure to immediately appeal one of these misnomered "final and appealable orders" results in a loss of the right to have the trial court action later reviewed. *See Mineo v. Tancini,* 349 Pa.Super. 115, 502 A.2d 1300 (1986), *Fidelity Bank v. Duden,* 361 Pa.Super. 124, 521 A.2d 958 (1987); (dissenting opinion by Del Sole, J.). This in and of itself invites cautious counsel, when faced with the difficult question of determining whether or not an order is appealable, to take an immediate appeal, delay the litigation at the trial level and further burden the appellate courts of Pennsylvania.

Further, the application of the rule of "final and appealable" is inconsistent. As an example, an order striking an affirmative defense raised in a new matter which alleges forgery of a document would be considered "final and

appealable" for interlocutory appeal purposes. However, a trial court's ruling during trial disallowing expert testimony to establish the alleged forgery would not be "final and appealable". In either event, the result to the litigant is the same and in both cases the review of the respective orders could be postponed until the conclusion of all activity at the trial court level.

Recently, a panel of this court, in *Elderkin v. Sedney*, 354 Pa.Super. 253, 511 A.2d 858 (1986), held that a sanction order which prevented a party from introducing evidence at the time of trial and which was entered for failure to comply with pre-trial rulings was not final and appealable. Accordingly, the appeal was quashed. While this court sitting en banc in *Fidelity Bank v. Duden*, 361 Pa.Super. 124, 521 A.2d 958 (1987) questioned the analysis found in *Elderkin, supra*, and particularly the application of *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985) to that case, I wish to point out that the Supreme Court has reaffirmed the position taken in *Elderkin* by its decision in *Bruno v. Elitzky*, 515 Pa. 47, 526 A.2d 781 (1987).

In *Bruno, supra*, the Supreme Court quashed an appeal as interlocutory which was based upon a trial court's order dismissing an answer and new matter filed by the defendants. The order was entered as a sanction for violation of the discovery rules when the defendants failed to answer interrogatories. The interesting aspect of the *Bruno* decision is in the Supreme Court's holding that the review of the entry of the sanction order could await the final disposition of litigation. Nevertheless, the Majority would have us hold today that the review of a partial summary judgment order cannot await such a final disposition.

The law in this area, as I have said, is unclear and dangerous to litigants and lawyers. A total re-examination and re-evaluation must be forthcoming so that these interlocutory appeals which are taken from misnamed "final orders" would not be permitted.

Certainly, in this case, where the court has entered a partial summary judgment, no appeal should be permitted

pending the final disposition of the underlying action. For the reasons set forth above, I respectfully dissent from the opinion of my colleagues.

BECK, J., joins.

MONTEMURO, Judge, dissenting:

Although I join the majority's well-reasoned analysis on the question of appealability, I cannot agree on the merits that the doctrine of collateral estoppel precludes Ms. Shepegi from raising her forgery defense in this action. I therefore dissent.

The majority recognizes that collateral estoppel will bar relitigation of an "issue of fact" only if the prior decision on that issue was essential to entry of a valid and final judgment. The majority also recognizes that the "issue of fact" at stake in Ms. Shepegi's action to open the confessed judgment was the authenticity of the signature on the *promissory note*. The majority concludes, however, that the authenticity of the signature on the *mortgage* was "essential" to the trial court's decision in the action to open and that the doctrine of collateral estoppel therefore precludes Ms. Shepegi from challenging in the present action the authenticity of that signature. In an effort to explain this non sequitur, the majority suggests that the parties in the action to open somehow agreed to "focus" on the authenticity of the mortgage signature as a means of conclusively establishing the authenticity of the promissory note signature. This implausible explanation has absolutely no support in the records of either the present action or the action to open. In the action to open, the parties submitted several documents to various handwriting experts to determine whether the documents contained the signature of Ms. Shepigi. For reasons unknown, the parties included among these documents copies of the mortgage, which was not then in issue, but failed to include copies of the promissory note upon which Mr. Zarnecki had confessed judgment. Nothing in the record indicates that the parties agreed to treat evidence of the mortgage signature as evidence of the

promissory note signature. Neither the trial court nor the parties consciously recognized the authenticity of the mortgage signature as important to, much less determinative of, the issue then at hand. We should not allow a simple oversight in a prior action to bar Ms. Shepegi's right to prove her defense in this action. I would therefore reverse the order of the trial court.