## Marra v. Stocker

*William E. Doyle*, for plaintiffs.

*John M. Metzger*, for defendant Merchants Bank N.A.

*Brian M. Monahan*, for defendant Brian Hartman.

FRANCIOSA, *J.,* July 6, 1988 — This non-jury matter comes before the court upon the filing of a petition and rule to show cause entered on September 14, 1987. Petitioner-plaintiffs requested the court to declare the sheriff's sale, conducted on April 10, 1987, null and void. Defendants filed timely answers to the petition and rule. A non-jury trial was held on January 27, 1988, before the Honorable Michael V. Franciosa. Pursuant to Pa.R.C.P. 1038 and based upon a careful review of the record, including both sets of stipulation of facts, we make the following

### FINDINGS OF FACT

(1) On November 22, 1982, the Redevelopment Authority deeded property to Robert S. Apgar and

Marie Apgar in Deed Book Vol. 644, page 172, and known as 704 Mauch Chunck Street, Easton, Pa.

(2) On November 11, 1982, Robert S. Apgar and Marie Apgar executed a mortgage to Merchants Bank, N.A. in the amount of $49,000 recorded in Mortgage Book Vol. 1263, page 1124.

(3) On September 9, 1985, Lawrence and Francesca Marra purchased the above property at a tax upset sale.

(4) Petitioners, Lawrence Marra and Francesca Marra, filed a landlord and tenant complaint before District Justice Maragulia on November 13, 1985, possession and money judgment of $4,000.

(5) On December 16, 1985, the Tax Claim Bureau deeded the property to Lawrence and Francesca Marra in Deed Book Vol. 693, page 707.

(6) On October 17, 1985, Robert S. Apgar and Marie E. Apgar filed a Chapter 7 Bankruptcy at no. 85-04444 in the U.S. District Court.

(7) Petitioners, Lawrence and Francesca Marra, were never a creditor listed in the bankruptcy petition and the bankruptcy court never listed Lawrence and Francesca Marra as creditors.

(8) On March 12, 1986, Lawrence Marra wrote a letter to John Metzger, Esq., attorney for Merchants Bank, N.A., advising of his interest and requesting a balance due on the mortgage. A copy of said letter was carbon copied to Richard R. Gorsky, collections manager, mortgage department, Merchants Bank, N.A.

(9) On May 15, 1986, Lawrence Marra sent a complete copy of the Northampton County Tax Claim Bureau records to attorney John Metzger and again requested the balance due on the mortgage. A copy of said letter was carbon copied to Richard R.

Gorsky, collections manager, mortgage department, Merchants Bank, N.A.

(10) On August 25, 1986, petitioners reinstated the landlord and tenant complaint which was served on defendants, Robert S. Apgar and Marie E. Apgar. A hearing was held on August 31, 1987, and judgment was entered for the amount of $4,000 and possession was granted to Lawrence and Francesca Marra.

(11) On December 22, 1986, Merchants Bank, N.A. filed a mortgage foreclosure at no. 1986-C-9788 against Robert S. Apgar and Marie E. Apgar, defendants, and Lawrence and Francesca Marra as terre tenants and was served on Lawrence and Francesca Marra on January 16, 1987.

(12) Petitioners, Lawrence Marra and Francesca Marra, did not file a responsive pleading to the complaint in mortgage foreclosure which was served upon them as terre tenants.

(13) The sheriff's sale was conducted on April 10, 1987, and the successful bidder was Brian Hartman for the sale price of $65,400.

(14) Petitioner, Lawrence Marra, attended in person the sheriff's sale held on April 10, 1987, and offered no bid whatsoever on the property when exposed to sale by the sheriff.

(15) The foreclosed mortgage contains a due-on-sale clause in paragraph 17 thereof. (See page 3 of the mortgage as recorded in Mortgage Book 1263 at page 1126.)

(16) The interest rate of 15 percent appearing in the note accompanying the foreclosed mortgage is not subject to Act 6 usury regulations inasmuch as said act was pre-empted for federally related lenders by the Depository Institutions Deregulation and Monetary Control Act, effective April 1, 1980, P.L. 96-221, 94 Stat. 161, §501(a)(1).

## DISCUSSION

Petitioners argue that the sheriff's sale conducted on April 30, 1987, is null and void because Merchants Bank, N.A., as mortgagee, did not notify the Marras of their intention to foreclose as required by Act 6. See 41 P.S. §101 et seq. Respondent bank argues that the Marras, as terre tenants who obtained title to the premises at an upset sale, are not entitled to the notice and cure provisions of Act 6 where the mortgage contains a due on sale clause.

Act 6 provides, in part, that before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation or commence any legal action including mortgage foreclosure that the lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance. 41 P.S. §403(a). A principal function of section 403 notice is to make the mortgagor aware of the existence of a default and his right to cure it; he is not to be "cursed" by an inadvertent delinquency. *Ministers & Missionaries Benefit Board v. Goldsworthy*, 253 Pa. Super. 324, 385 A.2d 358 (1978).

The Marras argue that a tax sale purchaser of the property is a "residential mortgage debtor" within the meaning of Act 6, section 101. That section provides that a:

" 'Residential mortgage debtor' means a non-corporate borrower who is obligated to a residential mortgage lender to repay in whole or in part a residential mortgage and a successor record owner of the property, if any, who gives notice thereof to the residential mortgage lender." 41 P.S. §101.

And, a "terre tenant" has been defined as "one who claims an interest in the land subject to the lien of the mortgage." *Bank of Pennsylvania v. G/N Enterprises Inc.* 316 Pa. Super. 367, 463 A.2d 4 (1983). The Marras obtained their interest in the

property by virtue of the tax upset sale in which the property was conveyed to them subject to all existing record liens. 72 P.S. §5860.609. As successor record owners, the Marras notified the lender of their interest six months after the tax sale purchase.

Although we cannot find authority addressing the precise issue of whether Act 6 notice must be given to a terre tenant, we assume that such notice is required in light of the act's purpose. The Marras clearly became successor record owners of the property by virtue of the tax sale and, upon giving notice to the lender of their interest in the property six months after the sale, they fall within the definition of a "residential mortgage debtor" in Act 6. For these buyers to clear their title to the property, they obviously must be given notice of foreclosure proceedings so that they may have the opportunity to pay off the mortgage prior to execution.

Though we find that terre tenants are entitled to notice of foreclosure, several recent cases have involved situations where either no notice or inadequate notice was given to the original borrower where the mortgage contained a due-on-sale clause and that fact did not preclude the mortgage foreclosure action.

Paragraph 17 of the mortgage executed between Robert and Marie Apgar with Merchants Bank provides, in pertinent part:

*"Transfer of the Property; Assumption* — If all or any part of the property or an interest therein is sold or transferred by borrower without lender's prior written consent . . . (exclusions omitted) . . . lender may, at lender's option, declare all the sums secured by this mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, lender and the person to whom the property is to be sold or trans-

ferred reach agreement in writing that the credit of such person is satisfactory to lender and that the interest payable on the sums secured by this mortgage shall be at such a rate as lender shall request. If lender has waived the option to accelerate provided in this paragraph 17, and if borrower's successor in interest has executed a written assumption agreement accepted in writing by lender, lender shall release borrower from all obligations under this mortgage and the note.

"If lender exercises such option to accelerate, lender shall mail borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which borrower may pay the sums declared due. If borrower fails to pay such sums prior to the expiration of such period, lender may, without further notice or demand on borrower, invoke any remedies permitted by paragraph 18 hereof."

A due-on-sale clause in a mortgage is a legitimate contractual stipulation and must be construed in accordance with the intention of the parties to the same extent as other contractual provisions. *Cloverleaf Development Inc. v. Horizon Financial F.A.*, 347 Pa. Super. 75, 500 A.2d 163 (1985). Due-on-sale acceleration clauses are not unusual and are not per se invalid except as their use may be restricted by statute. *Bank of Pennsylvania, supra.*

In *Goldsworthy, supra,* the court held that the notice of intent to foreclose sent to the borrower was not violative of section 403 despite the fact that it lacked information such as notice of the time within which the mortgagor was required to cure the default and the method or methods whereby the mortgagor's interest could be terminated and the mortgagor's right, if any, to transfer the real estate to

another person subject to the security interest or to refinance the obligation. In *Goldsworthy*, the mortgagors sold the property outright and foreclosure was based on the due-on-sale clause.

The court stated:

"This ability to prevent foreclosure and avoid acceleration, however, is distinctly delimited; it necessarily presupposes the existence of a default curable in the prescribed manner. Therefore, where acceleration is predicated upon default which cannot be cured, the reason for, and necessity of this information disappears.

"Although section 404 does not specify the type of default which may be cured, we agree with appellee that this section relates almost exclusively to monetary defaults. Thus to cure a default, subsection [404](b) directs that the mortgagor 'pay or tender' all delinquent sums, together with reasonable fees and costs, and any late penalty, and that the mortgagor 'perform any other obligation which he would have been bound to perform. . . .' Clearly, appellant could cure a default resulting from non-payment of principal and interest. Equally clear, however, is the fact that appellant could not cure a default based on conveyance of the premises in violation of the mortgage agreement. And, if mortgagors have already transferred the premises, any information as to their right to transfer is unnecessary. Based on the foregoing, we conclude that appellee's letter of July 28, 1975 provided all of the information required to comply with section 403." *Goldsworthy* at 332-3, 385 A.2d at 364.

The Superior Court also applied the *Goldsworthy* analysis to an installment-sale contract for the property between the borrower and a third party transferee. In *New Home Federal Savings & Loan v. Trunk,* 333 Pa. Super. 394, 482 A.2d 625 (1984), the court held that section 403, Act 6, notice is not

required in a situation where the default cannot be cured by the original owner acting alone, but requires some action by the transferees. The court did not address the issue of what notice, if any, must be given to the transferees.

A fair reading of these cases leads to the conclusion that Act 6 notice is more liberally construed where a due-on-sale clause has been breached. In this case, the Apgars allowed their property to become tax delinquent and subject to a tax sale. That sale transferred the property in violation of the due-on-sale clause since the property was sold without the lender's prior consent. The Marras purchased the property at the tax sale with knowledge of its existing liens.

Therefore, assuming that Act 6 notice is required to be given to terre tenants, we believe that the Marras suffered no prejudice in this case by not receiving a formal notice-of-intent-to-foreclose letter since the property was transferred to them in violation of the due-on-sale clause. They knew that they purchased the property subject to existing liens. It is true that during the pendency of the Apgar's bankruptcy proceedings, the Marras sent two letters to the bank requesting the status of the mortgage and raising the possibility of assigning their interest to the bank in exchange for a return of their money expended at the tax sale. Although we cannot understand why the bank failed to answer these requests, we nevertheless believe that subsequent actions by the Marras demonstrate that they were not prejudiced by the bank's failure to provide the information.

Once the bankruptcy was discharged, the bank filed a complaint in mortgage foreclosure naming the Marras as terre tenants. The complaint was served on the Marras on January 17, 1987, and set

forth the notice of intention to foreclose sent to the Apgars on June 3, 1985, the existence of the due-on-sale clause, and the amounts due on account of the accelerated mortgage as $63,949.65, plus interest from December 31, 1986, at the rate of 15 percent per annum, plus costs. In light of the less stringent requirements for notice where a due-on-sale clause has been breached, we find that the information contained in the complaint and attached exhibits provided the Marras with more than sufficient notice of the impending foreclosure proceedings.

After they received the complaint, the Marras neglected to pursue an available avenue of relief in the form of preliminary objections. Had they raised the issue of notice, the court would have made a prompt determination and decided whether or not a 30-day stay of the proceedings was necessary to preserve plaintiff's right to cure. *Gettysburg National Bank v. Trace,* 13 D. & C. 3d 679 (1980). Instead plaintiffs allowed a default judgment to be taken against them. Lawrence Marra then attended the sheriff's sale on April 10, 1987, and watched Brian Hartman purchase the property. Thereafter, the Marras waited until September 14, 1987, to file a rule to show cause why the sale should not be declared null and void.

When viewing this conduct in light of the knowledge that they purchased the property subject to existing liens and the fact that they received the mortgage foreclosure complaint and exhibits, including a notice of intent to foreclose sent to the Apgars prior to their bankruptcy proceedings, we find that plaintiffs have received actual notice of the foreclosure proceedings and have not been prejudiced by the bank's failure to send them an Act 6 notice 30 days prior to the filing of their complaint. See also *In*

*re Smith,* 59 B.R. 298 (E.D. Pa. 1986) (debtor failed to prove how she was harmed by mortgagee's failure to send Act 6 notice or a copy of the foreclosure complaint, since she received actual notice of the proceeding prior to the sale). Moreover, to require technical compliance at this late stage would be inequitable to the purchaser at the sheriff's sale since the Marras had sufficient time from their receipt of the complaint to either pay off the mortgage or seek postponement of the sale for 30 days on the grounds that they did not receive Act 6 notice.

### CONCLUSIONS OF LAW

(1) A terre tenant is entitled to receive Act 6 Notice.

(2) The notice and cure provisions of Act 6, 41 P.S. §101 et seq. are more liberally construed where the mortgage contains a due-on-sale clause. *Goldsworthy, supra; New Home, supra.*

(3) Plaintiffs received actual notice of the foreclosure proceedings and were not prejudiced by the bank's failure to comply with Act 6.

### VERDICT

And now, this July, 6 1988, plaintiffs' petition to declare the sheriff's sale null and void is denied and dismissed.