In re Johnnie Mae SMITH, Debtor.

Johnnie Mae SMITH, Plaintiff,

v.

COMMERCIAL BANKING CORP., Buffalo Savings Bank, and its Servicing Agent, Fidelity Bond and Mortgage Company, and James J. O'Connell, Defendants.

Bankruptcy No. 81–04190G.
Adv. No. 81–16666G.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 11, 1986.

Hazel M. Mack, Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiff, Johnnie Mae Smith.

Andrew N. Schwartz, Philadelphia, Pa., for defendant, Commercial Banking Corp.

Joseph A. Goldbeck, Jr., Philadelphia, Pa., for defendant, Buffalo Sav. Bank and its Servicing Agent Fidelity Bond and Mortg. Co.

James J. O'Connell, Philadelphia, Pa., Trustee/defendant.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

At the heart of this dispute the question is whether the debtor is entitled to damages for the foreclosure of a mortgage on a parcel of her realty when she did not receive notice of the foreclosure until shortly before the sheriff's sale. For the reason stated herein, we will deny the debtor's request for damages.

The facts of this case are as follows:[1] The debtor purchased a parcel of realty in Philadelphia in 1963 and granted a mortgage thereon to Buffalo Savings Bank ("Buffalo"). The mortgage was insured by the Federal Housing Administration ("FHA") and serviced by Fidelity Bond and Mortgage Company ("Fidelity"). The debtor fell in default on the mortgage and Fidelity commenced foreclosure proceedings in July of 1980. The following month the sheriff attempted to effect service of the mortgage complaint by delivering a copy to an individual residing on the realty. Although Fidelity knew that the debtor was residing elsewhere, service was not made on the debtor or at her residence.

In the beginning of September 1980, default judgment was entered on the foreclosure complaint. Three weeks later, at the end of September, the debtor first learned of the foreclosure action. She contacted Fidelity and discovered that a sheriff's sale of the property was scheduled for October 6. The debtor requested that the sale be postponed and Fidelity complied by rescheduling the sale for November 3.

With hopes of reinstating the mortgage, the debtor flew to Philadelphia and offered Fidelity $1,300.00. Fidelity declined stating that the outstanding deficiency was $1,997.88, consisting of $1,199.38 in missed monthly payments and late charges, $774.50 in attorneys' fees and $24.00 in inspection costs.

The property was sold at sheriff's sale on November 3 to Commercial Banking Corp. ("Commercial") for a bid of $4,600.00. The debtor then began leasing the property from Commercial.

Shortly thereafter the debtor filed a petition for the repayment of her debts under chapter 13 of the Code and she then commenced the instant suit against Buffalo, Fidelity, Commercial and James J. O'Connell, the standing chapter 13 trustee. Commercial was ultimately dismissed from the suit when it agreed to return the property to the debtor for $8,000.00.

Resorting to the oft used "shotgun" approach, the debtor advances five causes of action, none of which clearly entitle her to damages under the facts of this case. Notwithstanding the novel application of some of her theories to these facts, her brief addresses the five causes of action in a total of ten pages,—a classic scatter pattern for the "shotgun" approach.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

■ The first theory is that Fidelity violated Pa.R.Civ.P. 1145(c)[2] by not mailing a copy of the foreclosure complaint to the debtor's residence. While it is clearly true that Fidelity violated Rule 1145, it is equally clear that the debtor failed to prove how she was harmed by this violation since the debtor received actual notice of the proceeding prior to the sheriff's sale. The debtor has not advanced any meritorious defense she would have introduced at the trial on the foreclosure complaint had she received timely notice of the proceeding. Furthermore, the debtor has not pointed to any provision of law allowing us to levy damages against Fidelity simply because of its technical violation of Rule 1145, and none is apparent to us.

■ Under her second cause of action the debtor contends that Fidelity violated Pa.Stat.Ann. tit. 41, § 404 (Purdon 1985 Supp.)[3]—which allows for the curing of a mortgage default by the payment of all arrearages, attorneys' fees and costs— when it "impermissibly inflated the amount needed for a cure when [the debtor] re-

turned to Philadelphia to try to prevent a foreclosure." There is no proof of record that Fidelity inflated its charges, and thus this cause of action is without merit.

■ The debtor's third basis for recovery is predicated on the assertion that the foreclosure of the FHA insured mortgages is governed by regulations of the Department of Housing and Urban Development. These regulations provide that:

> Mortgagees are expected to avoid the foreclosure or assignment of HUD insured mortgages and to utilize acceptable methods of forebearance relief whenever feasible ... Any of the relief measures discussed in this chapter may be used and mortgagees are expected to refrain from foreclosure where it is determined that the case may be salvaged through use of one or more of these procedures.

Debtor's brief p. 9, quoting from *HUD Handbook*, Ch. 8, § 121.

Assuming that HUD regulations are applicable here, the debtor asserts that the

---

**2.** (a) The complaint shall be served by the sheriff upon the defendants. He shall also serve any person not named as a party who is found in possession of the land and shall so state in his return but such person shall not thereby become a party to the action.

(b) The plaintiff shall have the right of service upon a defendant in any other county by having the sheriff of the county in which the action was commenced deputize the sheriff of the county where service may be had.

(c) If service cannot be made under Subdivision (a) or (b) of this rule and the plaintiff sets forth in his complaint or files an affidavit that a defendant is deceased or his whereabouts unknown, or that he resides outside the Commonwealth, the sheriff shall forthwith (1) make service on that defendant by posting a copy of the complaint on the most public part of the land and (2) send him, if not known to be deceased, a copy of the complaint by registered mail to his last known address.

Pa.R.Civ.P. 1145.

**3.** § 404. Right to cure a default

(a) Notwithstanding the provisions of any other law, after a notice of intention to foreclose has been given pursuant to section 403 of this act, at any time at least one hour prior to the commencement of bidding at a sheriff

sale or other judicial sale on a residential mortgage obligation, the residential mortgage debtor or anyone in his behalf, not more than three times in any calendar year, may cure his default and prevent sale or other disposition of the real estate and avoid acceleration, if any, by tendering the amount or performance specified in subsection (b) of this section.

(b) To cure a default under this section, a residential mortgage debtor shall:

(1) Pay or tender in the form of cash, cashier's check or certified check, all sums which would have been due at the time of payment or tender in the absence of default and the exercise of an acceleration clause, if any;

(2) Perform any other obligation which he would have been bound to perform in the absence of default or the exercise of an acceleration clause, if any;

(3) Pay or tender any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment.

(4) Pay any reasonable late penalty, if provided for in the security document.

(c) Cure of a default pursuant to this section restores the residential mortgage debtor to the same position as if the default had not occurred.

Pa.Stat.Ann. tit. 41, § 404 (Purdon 1985 Supp.).

Fidelity breached the terms of the above quoted language by failing to accept the debtor's tender of partial payment on the arrearage. We conclude that this is neither a violation of the regulation quoted above, nor is it clear to us that this regulation gives a debtor an implied cause of action for damages against a mortgagee. Hence, the third cause of action is without merit.

The fourth asserted basis for relief is that "the totality of [Fidelity's] conduct was deceptive under" Pennsylvania's Unfair Trade Practices and Consumer Protection Law. Pa.Stat.Ann. tit. 73, §§ 201–1 to 204–9 (Purdon 1985 Supp.). Although the statute in question is too lengthy to reproduce here, we have reviewed it and conclude that Fidelity's conduct is not actionable under that statute.

The last cause of action raised by the debtor is that Fidelity's conduct was an abuse of process. Under Pennsylvania law an abuse of process entails an appropriate commencement of legal proceedings although those proceedings may ultimately be used for an improper end. *Baird v. Aluminum Seal Co.*, 250 F.2d 595 (3d Cir. 1958). Under the facts of this case we see no abuse of process.

Since the debtor has failed to advance a meritorious cause of action, we will deny the debtor all relief on her complaint.