**In re Johnnie Mae SMITH, debtor.**

**Johnnie Mae SMITH,**

v.

**COMMERCIAL BANKING CORP., et al.**

**Civ. A. No. 86–3033.**

United States District Court, E.D. Pennsylvania.

May 20, 1988.

Eric L. Frank, C.L.S. Inc., Philadelphia, Pa., for plaintiff/appellant.

Joseph A. Goldbeck, Philadelphia, Pa., for Buffalo Sav. Bank and its Servicing Agent Fidelity Bond and Mortg. Co.

James J. O'Connell, Philadelphia, Pa., trustee/defendant.

Andrew N. Schwartz, Philadelphia, Pa., for Commercial Banking Corp./defendant.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Johnnie Mae Smith appeals from an Order of the Bankruptcy Court, 59 B.R. 298, refusing to invalidate the foreclosure and subsequent sale of certain of her real estate and refusing to award her damages. The Order is affirmed.

## FACTS

The Bankruptcy Court made the following factual findings:

Smith purchased a parcel of real estate at 1356 East Rittenhouse Street, Philadelphia, Pennsylvania (the "Property") in 1963 and granted a mortgage thereon to Buffalo Savings Bank ("Buffalo"). The mortgage was insured by the Federal Housing Administration and serviced by Fidelity Bond and Mortgage Company ("Fidelity"). Smith defaulted on the mortgage and Fidelity began foreclosure proceedings in July, 1980. The following month, the sheriff attempted to serve the mortgage complaint by delivering a copy to an individual residing at the Property. Although Fidelity knew that Smith did not reside at the Property, service was not made on her personally or at her residence.

Default judgment was entered on the foreclosure complaint in September, 1980. It was not until three weeks after the default judgment that Smith learned of the foreclosure action. She contacted Fidelity and learned that a sheriff's sale of the Property was scheduled for October 6, 1980. At Smith's request Fidelity rescheduled the sheriff's sale for November 3, 1980. Plaintiff then offered Fidelity $1,300 to satisfy the outstanding mortgage debt. Fidelity refused; it insisted that Smith pay $1,997.88, consisting of $1,199.38 in overdue payments and late charges, $774.50 in

attorneys' fees and $24.00 in inspection costs.

The Property was sold at sheriff's sale on November 3, 1980 to Commercial Banking Corporation ("Commercial") for $4,600.[1] Smith then began leasing the Property from Commercial. On November 17, 1980, Smith filed a petition for the repayment of her debts under Chapter 13 of the Bankruptcy Code and commenced an adversary proceeding against Buffalo, Fidelity, Commercial, and the bankruptcy trustee. Commercial settled out of the litigation by selling the Property back to Smith for $8,000.

## DISCUSSION

This court exercises plenary review over legal conclusions by the Bankruptcy Court. *Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049, 1052–53 (3d Cir.1984). Factual findings are reviewed under a clearly erroneous standard. *In Re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983).

In the adversary action in the Bankruptcy Court, Smith asserted five causes of action. The court denied all of her claims. Smith raises only two issues on appeal:

    1. Whether the Bankruptcy Court committed an error of law in holding that appellee's conduct was not unfair and deceptive under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201–1 *et seq.*

    2. Whether the Bankruptcy Court committed an error of law in holding that appellee's conduct did not give rise to a claim for abuse of process.

Appellees contend that the Bankruptcy Court erred in its factual finding that Fidelity knew that Smith did not reside at the Property.

It was not clearly erroneous for the Bankruptcy Court to find that Fidelity knew Smith was not living at the Property in August, 1980. On June 19, 1980, Smith sent Fidelity a notarized letter stating that she was residing in Germany and asking

Fidelity to send future bills to her in Germany. The letter also stated that Smith was not then well enough to return to the United States. Fidelity began mortgage foreclosure proceedings in July, 1980 and tried to make service of the complaint at the Property in August, 1980. In addition, there was sufficient other evidence of record to support the Bankruptcy Court's finding.

Smith contends that appellees' activities violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201–1 *et seq.* ("Consumer Protection Law"). The Consumer Protection Law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xvii) of [73 P.S. 201–2(4) ]." 73 P.S. 201–3. The only defined practice that arguably applies to the instant action is the catch-all provision that prohibits "[e]ngaging in any other *fraudulent* conduct which creates a likihood of confusion or misunderstanding." 73 P.S. 201–2(4)(xvii) (emphasis added). This section "was designed to cover generally all unfair and deceptive acts or practices in the conduct of trade or commerce." *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812, 829 (1974).

The Consumer Protection Law was intended to prevent fraudulent behavior by sellers that misled innocent purchasers of goods and services. *See Monumental Properties*, 329 A.2d at 815–827. In *Monumental Properties*, the Commonwealth alleged that a group of residential landlords was using form leases the language of which violated the Consumer Protection Law. The Pennsylvania Supreme Court first found that the Consumer Protection Law applied to residential leasing. It found that the law should be read broadly and *in pari materia* with the Federal Trade Commission Act and the Lanham Act. *Id.* at 817–818. Because the lower court had dismissed the complaint for fail-

---

**1.** The court assumes that Smith received any proceeds in excess of the mortgage debt, fees, and costs.

ure to state a cognizable claim, the Supreme Court did not reach the merits of whether the leases as written were deceptive and misleading. *Id.* at 828. Instead, it remanded the action for decision on the merits.

Although the Consumer Protection Law proscribes certain conduct that would not be common law fraud, the elements of fraud are instructive in its interpretation because the statute speaks of "fraudulent conduct." Fraud occurs if a person knowingly makes a material misrepresentation or omission on which another person justifiably relies to his detriment. *See Edelson v. Bernstein*, 382 Pa. 392, 115 A.2d 382, 383 (1955).

Smith contends that, as a whole, Fidelity's conduct was fraudulent, deceptive, and misleading. She does not claim that Fidelity undertook any deceptive or misleading actions to induce her to enter into the mortgage agreement. Rather, she contends that Fidelity (1) improperly served notice of the foreclosure action, (2) insisted on an excessive amount to cure the default, and (3) violated federal regulations by refusing to accept partial payment to cure the default.

The bankruptcy court found, and this court agrees, that Fidelity failed to make proper service of the foreclosure complaint. Nevertheless, Fidelity's actions were not deceptive, misleading, or fraudulent. Even if the failure to give notice constituted a material omission, Smith was not damaged. When Smith first learned of the foreclosure judgment, she contacted Fidelity, which agreed to a 30 day postponement of the sheriff's sale. Any prejudice to Smith from the improper service was cured by the postponement of the sheriff's sale.

In addition, Smith brought an action in state court to set aside the default judgment for lack of notice. The Court of Common Pleas refused to set aside the default judgment. Smith appealed to the Superior Court, then removed the appeal to the federal bankruptcy court under 28 U.S.C. 1478(a). The bankruptcy court remanded the appeal to the Superior Court. The record before this court does not indicate the ultimate resolution of the state action.

Smith alleges that Fidelity's insistence that she pay legal fees and costs to cure her mortgage default violated her right to cure the default. Fidelity was required to give Smith notice of the default 30 days prior to commencing the foreclosure action. 41 P.S. 403(a).[2] Fidelity did not do so, but, after Smith received notice, Fidelity agreed to postpone the sheriff's sale for 30 days. Smith argues that Fidelity's failure to give proper notice required it to accept the $1300 she offered to satisfy the debt and precluded it from insisting that she pay legal fees and costs under 41 P.S. 404.[3] Even if Fidelity improperly insisted on payment of fees and costs, there would not be a basis for recovery under the Consumer Protection Law. Fidelity's conduct did not involve any misrepresentations or omissions on which Smith relied; therefore, it was not fraudulent.

Smith asserts that Fidelity failed to comply with internal regulations of the United

**2.** Title 41 P.S. 403(a) reads in pertinent part:
(a) Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, [or] commence any legal action including mortgage foreclosure to recover under such obligation, ... such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

**3.** Title 41 P.S. 404 reads in pertinent part:
(a) Notwithstanding the provisions of any other law, after a notice of intention to foreclose has been given pursuant to section 403 of this act, at any time at least one hour prior to the commencement of bidding at a sheriff sale or other judicial sale on a residential

mortgage obligation, the residential mortgage debtor or anyone in his behalf ... may cure his default and prevent sale or other disposition of the real estate ... by tendering the amount or performance specified in subsection (b) of this section.
(b) To cure a default under this section, a residential mortgage debtor shall:
(1) Pay or tender in the form of cash, cashier's check or certified check, all sums which would have been due at the time of payment or tender in the absence of default and ...
....
(3) Pay or tender any reasonable [attorney's] fees ... and the reasonable costs of proceeding to foreclosure....

States Department of Housing and Urban Development ("HUD") by refusing to accept her tendered payment of $1300. *See Lenders Handbook*, HUD Handbook 4191.1 (rev'd February 25, 1977). She argues that the regulations applied because the mortgage was federally guaranteed. Under the HUD regulations, a lender of a federally guaranteed mortgage is obligated to make reasonable efforts to avoid foreclosure, including accepting partial payments on the mortgage. Nevertheless, once foreclosure proceedings have begun, the mortgage lender no longer must accept partial payments. 24 C.F.R. 203.556(d)(4). Smith's payment was offered after the foreclosure complaint was filed, so Fidelity had no obligation to accept it.

Smith also contends that appellees committed abuse of process. To constitute abuse of process, "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *DiSante v. Russ Financial Co.*, 251 Pa.Super. 184, 380 A.2d 439, 441 (1977). Fidelity used the foreclosure action for the legitimate objective of collecting a debt owed. There was no evidence of ulterior motive or improper use of the foreclosure procedures. Failure to make proper service of process does not constitute abuse of legal process.

## CONCLUSION

Fidelity's conduct, considered as a whole, was not fraudulent or deceptive, so it is not actionable under the Consumer Protection Law. Although Fidelity did not comply completely with proper foreclosure procedure, there was no prejudice to Smith. To the extent Smith claimed to have been denied due process, she had recourse in her state court action. Smith failed to state a cause of action for abuse of process by Fidelity for foreclosing on plaintiff's Property.

## ORDER

AND NOW, this 20th day of May, 1988, for the reasons stated in the foregoing memorandum, it is ORDERED that the decision of the Bankruptcy Court is AFFIRMED.