478 A.2d 1339

**Donald L. ELLIS, Jr. and Jeanni E. Ellis, Individually and as Guardians of the Minor Donald L. Ellis, III, Appellants,**

**·v.**

**Alfred J. SHERMAN, M.D., John G. Goedecke, Robert E. Stevenson, M.D., Donald F. Post, M.D., Sherman Associates, Paul A. Wengert, M.D., James E. Jones, M.D. and James Daly, M.D.**

Superior Court of Pennsylvania.

Argued April 5, 1984.

Filed June 29, 1984.

Charles M. Tobin, Silver Springs, for appellants.

James W. Evans, Harrisburg, for Sherman, M.D., appellee.

Linda S. Porr, Harrisburg, for Wengert, M.D., appellee.

C. Kent Price, Harrisburg, for Daly, M.D., appellee.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

The sole issue on appeal is whether the lower court correctly dismissed the infant-appellant's cause of action for "wrongful life". We conclude that the lower court properly held that a "wrongful life" action is not legally cognizable in Pennsylvania. Accordingly, we affirm.

The record in the instant case discloses the following facts.[1] Throughout his childhood and adolescence, appellant Donald Ellis, Jr., was treated by appellee-pediatricians,

---

1. The plaintiffs-appellants in this matter are Donald and Jeanni Ellis and their infant son, Donald Ellis III. The defendants-appellees are various physicians who have treated appellants.

Drs. James Jones and James Daly, for a recurrent skin condition, manifested by minor skin discolorations and occasional lesions. Appellant claims that he was never informed of the true nature of his disease. In the summer of 1978, appellee-surgeon, Dr. Paul Wengert, removed several skin lesions from appellant and informed him that the lesions were not malignant. Subsequently, in 1979, appellant Jeanni Ellis consulted with appellee-obstetrician, Dr. Alfred Sherman, prior to and after conceiving a child. During the course of an early consultation, when Mrs. Ellis was asked about her family's medical history, she indicated that her husband suffered from a skin disease. Dr. Sherman probed no further into this comment. In fact, according to the lower court, "Dr. Sherman indicated that Mr. Ellis' disease would have no bearing on the health of plaintiff's future child." (Lower Court Opinion at 3). In April, 1980, Mrs. Ellis gave birth to Donald Ellis III (Donnie). At approximately five months of age, Donnie suffered from seizures that were subsequently diagnosed as manifestations of Von Recklinghausen's Disease.[2] Because of his disorder, Donnie suffers from severe mental and physical disabilities. Appellants, who after Donnie's diagnosis learned that Mr. Ellis is a carrier of Von Recklinghausen's Disease, assert that had they known the nature and possible genetic consequences of Mr. Ellis' condition, they would have employed all precautions to avoid conceiving any children.

On April 14, 1982, appellants filed a complaint in trespass and assumpsit raising five distinct causes of action—four on behalf of themselves and one on Donnie's behalf. In the first count, appellants claimed that all of the several appellees negligently failed to exercise the requisite duty of care in their treatment of and consultation with appellants. The second and third causes of action alleged that Drs. Jones, Daly and Wengert had breached their respective contracts with appellants. In the fourth count, appellants averred

---

**2.** Von Recklinghausen's Disease, commonly known as neurofibromatosis, is a hereditary neurologic disorder which, in its mild form, is manifested by "cafe-au-lait" colored spots on the skin, and in more severe strains, is manifested by slow-growing neurofibromas.

that Dr. Sherman had breached his contract with them. Finally, the fifth cause of action—and the only one before us on appeal—sought recovery of damages for Donnie's "wrongful life". Appellees raised preliminary objections in the nature of a demurrer to all five causes of action. The lower court permitted counts one and four to stand, but dismissed counts two, three and five. As previously mentioned, appellants have asked us to review only the lower court's dismissal of Donnie's "wrongful life" claim.[3]

Appellants contend, in effect, that (1) Pennsylvania appellate court decisions do not necessarily preclude an injured infant's "wrongful life" action and (2) notwithstanding the unfavorable view expressed in recent Pennsylvania court pronouncements, we should follow the lead of other jurisdictions which, appellants assert, have upheld "wrongful life" claims as legally cognizable causes of action. Upon thorough review of the law in this Commonwealth and in other jurisdictions, we disagree with appellants' assertions.

In *Speck v. Finegold,* 268 Pa.Superior Ct. 342, 408 A.2d 496 (1979) (en banc), *aff'd in part, rev'd and remanded in part,* 497 Pa. 77, 439 A.2d 110 (1981), the Pennsylvania Supreme and Superior Courts first reviewed the cognizability of a claim seeking recovery of damages for "wrongful life".[4] The adult plaintiffs in *Speck,* already the parents of two children born with neurofibromatosis, which afflicted Mr. Speck as well, tried to avoid conceiving any more children. Mr. Speck underwent a vasectomy which, when the couple conceived a child, proved unsuccessful. Mrs. Speck then underwent an abortion. This too proved futile as evidenced by the birth of the infant-plaintiff approximately five months later. This child suffered from the same disorder that afflicted her father and older siblings.

---

**3.** We maintain jurisdiction over this appeal pursuant to *Praisner v. Stocker,* 313 Pa.Superior Ct. 332, 459 A.2d 1255 (1983). Our jurisdiction is also consistent with that taken in *Speck v. Finegold,* 268 Pa.Superior Ct. 342, 408 A.2d 496 (1979) (en banc), *aff'd in part, rev'd and remanded in part,* 497 Pa. 77, 439 A.2d 110 (1981).

**4.** Hereafter, any citation to *Speck v. Feingold,* will be a citation to *either* the Supreme Court or Superior Court opinion.

The Specks brought suit in trespass on behalf of themselves and also brought a "wrongful life" claim on behalf of their daughter, claiming that she would have been better off never having been born. The Superior Court majority began its discussion by noting:

> First, there is no precedent in appellate judicial pronouncements that holds a child has a fundamental right to be born as a whole, functional human being.... Second, it is not a matter of taking into consideration the various and convoluted degrees of the inperfection of life. It is rather the improbability of placing the child in a position she would have occupied if the defendants had not been negligent when to do so would make her non-existent.

*Speck v. Finegold*, 268 Pa.Superior Ct. at 364–65, 408 A.2d at 508. Judge Spaeth, joining the majority in this portion of its opinion, artfully disclosed the fundamental premise of a "wrongful life" claim: "[I]n essence [the child] claims that non-existence—never being born—would have been preferable to existence in her diseased state. But no one is capable of assessing such a claim.... The value of non-existence [is not within the experience or imagination of most people]." *Id.*, 268 Pa.Superior Ct. at 372, 408 A.2d at 512 (SPAETH, J. concurring and dissenting). The majority concluded that:

> Thus, a cause of action brought on behalf of an infant seeking recovery for "wrongful life" on grounds she should not have been born demands a calculation of damages dependent on a comparison between Hobson's choice of life in an impaired state and non-existence.

*Id.*, 268 Pa.Superior Ct. at 365, 408 A.2d at 508. Hence, this Court found that an action seeking recovery for "wrongful life" is not cognizable in law.

The Supreme Court, upon review, split its votes on the question of the viability of a "wrongful life" action. Justice Flaherty, with whom two Justices joined, opined that "where an existing infant experiences suffering and financial expense as a result of another's negligence, that

suffering and expense should be recompensed." *Speck v. Finegold,* 497 Pa. at 85, 439 A.2d at 121. However, because the three remaining Justices agreed with the Superior Court that a child cannot legally be recompensed for an alleged "wrongful life", thus resulting in an evenly divided court, we are bound to follow our Court's *en banc* opinion. *See Stribling v. de Quevedo,* 288 Pa. Superior Ct. 436, 432 A.2d 239 (1980) (following unsuccessful tubal ligation, plaintiff gave birth to child born with dextrocardia; court relied on *Speck v. Finegold* to hold that child's "wrongful life" action was not cognizable in law). *See generally Speck v. Finegold,* 268 Pa.Superior Ct. 342, 408 A.2d 496 (1979) (en banc), for a discussion of other jurisdictions' rejection of "wrongful life" claims. *See also Berman v. Allan,* 80 N.J. 421, 404 A.2d 8 (1979); *Gleitman v. Cosgrove,* 49 N.J. 22, 227 A.2d 689 (1967).

Accordingly, faced with the almost imponderable question of whether non-existence is preferable to existence in an impaired state, and the inability either to answer the question or to ascertain the appropriate calculation of damages, we must hold that Donnie's cause of action for "wrongful life" is not cognizable in law. Moreover, it is clear that the leading Pennsylvania appellate court opinion decisively rejects such a cause of action.

Nonetheless, appellants would have us consider and accept the positions of the California and Washington Supreme Courts which, according to appellants, have clearly recognized actions for "wrongful life" on behalf of minor children. In *Turpin v. Sortini,* 119 Cal.App.3d 690, 174 Cal.Rptr. 128 (1981), *rev'd and remanded,* 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954 (1982), the plaintiffs' eldest daughter had been incorrectly diagnosed as a hearing child when, in fact, she suffered from complete deafness. When a second child was born with the same hearing deficiency, the plaintiffs brought a "wrongful life" action on behalf of the second child claiming both general damages and special damages for extraordinary medical and educational expenses. The California Supreme Court determined that

it is simply impossible to determine in any rational or reasoned fashion whether the plaintiff has in fact suffered an injury in being born impaired rather than not being born and ... even if it were possible to overcome the first hurdle, it would be impossible to assess general damages in any fair, nonspeculative manner.

31 Cal.3d at 235, 182 Cal.Rptr. at 346, 643 P.2d at 963. However, the California court did permit the child to recover special damages for any extraordinary medical and educational expenses necessitated by her impairment.

In *Harbeson v. Parke-Davis*, 98 Wash.2d 460, 656 P.2d 483 (1983), the infant-plaintiff's mother, an epileptic, took the drug Dilantin while pregnant and gave birth to two children with "fetal hydantoin syndrome". Alleging that Air Force doctors had committed negligence by failing to conduct a literature search on the effect of Dilantin on pregnancy and fetal development, the parents brought suit for, *inter alia*, recovery for the child's "wrongful life". The Washington Supreme Court held that

a child may maintain an action for wrongful life to recover the extraordinary expenses to be incurred during the child's lifetime, as a result of the child's congenital defect. Of course, the costs of such care for the child's minority may be recovered only once. If the parents recover such costs for the child's minority in a wrongful birth action, the child will be limited to the costs to be incurred during her majority.

*Id.* at 479, 656 P.2d at 495. It is unfortunate that the Washington court chose to characterize the particular cause of action it recognized as one for "wrongful life". In separating the cause of action from its label, and in considering the context of the Washington court's pronouncement, we are convinced of the inaccuracy of appellants' assertion that a "wrongful life action", such as the one brought on Donnie's behalf, has been found legally cognizable. For, in effect, the Washington Court, like California, in permitting a claim for extraordinary damages, has simply extended the recovery available to injured parents in a

wrongful birth action. Allowing the child recovery for medical and educational expenses occurring after its minority does not assign liability based on a finding that non-existence in a given case would have been preferable to an impaired existence. Rather, similar to a wrongful birth action, such recovery compensates the parents for the extraordinary costs associated with the child's condition. This distinction leaves the abstract concept of non-existence to philosophers and theologians who are better able to hypothecate as to its benefits, and removes the question from the legal realm. We believe that this distinction, although not embraced by all,[5] facilitates our understanding of what the Washington and California courts have permitted in the area of "wrongful life".[6]

Based on the foregoing analysis, we believe that in Pennsylvania, regardless of what damages are sought on behalf of the infant-plaintiff, a "wrongful life" action is not legally cognizable.[7] Accordingly, we affirm the lower court's order dismissing appellant's fifth cause of action.

Affirmed.

**5.** In *Turpin v. Sortini, supra,* Justice Mosk, joined by Chief Justice Bird, dissented and noted that "[a]n order is internally inconsistent which permits a child to recover special damages for a so-called wrongful life action but denies all general damages for the very same tort." *Turpin v. Sortini, supra,* 31 Cal.3d at 240, 182 Cal.Rptr. at 349, 643 P.2d at 966 (MOSK, J. dissenting).

**6.** We note that appellants, by their own description, did not specifically request recovery for special damages associated with educational and medical expenses in Donnie's "wrongful life" claim. On Donnie's behalf, appellants claimed damages from the defendants

for the diminished childhood that he will be required to endure as a result of his mental and physical condition. He has also suffered extensive pecuniary losses incident to his birth in an impaired condition, including the income that he could have earned subsequent to his majority as a fully functional and productive member of society. He further claims damages for the physical pain and suffering, and the mental and emotional anguish that he will suffer for the duration of his lifetime, as the direct and proximate result of the Defendants' wrongful omissions and acts.

(Appellants' Brief at xv).

**7.** We disagree with appellants' reliance on *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *Roe v. Wade* and its progeny do

not require that states provide for recovery in or recognition of a cause of action for "wrongful life". As Justice Nix wrote in his opinion in *Speck v. Finegold*: "[T]here can be no question that refusal to create new tort liability does not constitute governmental interference with the constitutionally protected access to abortion. The right to seek an abortion is neither predicated upon the existence of a negligence cause of action, nor is it deterred by the absence of such a cause of action." 497 Pa. at 97, 439 A.2d at 120.