583 A.2d 1180

G. Brinton MOTHERAL, III, Appellant,

v.

Ann BURKHART, an individual, Deborah Lesko, an individual, and Kratzenberg, Shields and Lesko, P.C., a professional corporation.  (Two Cases)

Superior Court of Pennsylvania.

Argued May 31, 1990.

Filed Dec. 14, 1990.

410

Thomas A. McDonnell, Pittsburgh, for appellant.

Barbara J. Shah, Bethel Park, for Burkhart, appellee.

Before ROWLEY, WIEAND, OLSZEWSKI, MONTEMURO, BECK, KELLY, POPOVICH, JOHNSON and FORD ELLIOTT, JJ.

ROWLEY, Judge:

During the course of a bitter custody dispute between appellant G. Brinton Motheral and his wife, Gretchen Burkhart, from whom he is now divorced, appellant allegedly threatened his wife's mother, Ann Burkhart. The incident resulted in the filing of criminal charges against appellant, all of which were later dropped or nolle prossed. As a result of the filing of the criminal charges, which he contends were unfounded, appellant instituted the present civil action. In a multi-count complaint he asserted claims of malicious prosecution and intentional infliction of emotional distress against appellees Ann Burkhart and Deborah Lesko, who was Gretchen Burkhart's attorney in the divorce action, as well as claims of malicious prosecution and negligence against appellee Kratzenberg, Shields and Lesko, P.C., Lesko's law firm. Appellant filed these appeals to challenge the trial court's dismissal of five of the six counts in his complaint.

Before considering the merits of appellant's claims, we are required to determine whether the orders dismissing some but not all counts of the multi-count complaint are final and appealable. The case has been certified for *en banc* consideration of this issue, which was previously considered by the Court *en banc* in *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983).

In order to understand the nature of appellant's claims, we set forth in greater detail the factual and procedural history of the case. On February 5, 1988, Ann Burkhart

was in her daughter's automobile, waiting for her daughter and granddaughter (appellant's wife and daughter) to return from a doctor's appointment, when, she asserted, appellant appeared and threatened to kill her. She reported the incident to the police. As a result, appellant was arrested and charged with simple assault, 18 Pa.C.S. § 2701, terroristic threats, 18 Pa.C.S. § 2706, harassment, 18 Pa.C.S. § 2709, and intimidation of a witness, 18 Pa.C.S. § 4952. At a preliminary hearing, the magistrate dropped the charges of simple assault and intimidation of a witness. Appellant was bound over for trial on the charges of terroristic threats and harassment, but these charges were subsequently nolle prossed by the district attorney.

On June 1, 1988, appellant filed a six-count complaint against appellees. In Counts I and III of the complaint he alleged malicious prosecution on the part of Burkhart and Lesko, respectively. In Counts II and IV he asserted claims of intentional infliction of emotional distress against Burkhart and Lesko, respectively. Counts V and VI asserted claims of malicious prosecution and negligence, respectively, against the law firm. At the heart of appellant's claims against Burkhart was the allegation that she knowingly made false accusations in order to procure the filing of criminal charges against him and thereby "to influence other litigation [i.e., the custody proceeding] ... and ... to intimidate, harass, embarrass and otherwise cause harm to" him. As to Lesko, appellant asserted that in an attempt to influence the custody proceeding she encouraged the police to file charges against him even though she knew or should have known that Burkhart's allegations were untrue. Appellant sought to hold the law firm liable for Lesko's allegedly tortious actions on the theories of respondeat superior and negligent supervision.

Burkhart filed preliminary objections in the nature of demurrers to Counts I and II, as well as a motion to strike and a motion for a more specific pleading. Lesko filed preliminary objections in the nature of demurrers to Counts III and IV, along with a motion to strike paragraphs 32 through 36 of Count III. The law firm filed preliminary

objections in the nature of demurrers to Counts V and VI and a motion to strike paragraph 56 of Count V.

On August 23, 1988, after argument on the preliminary objections, the trial court entered an order sustaining Burkhart's preliminary objection in the nature of a demurrer to Count II and dismissing that count. The preliminary objection in the nature of a demurrer to Count I was overruled. In addition, the trial court sustained Lesko's preliminary objection in the nature of a demurrer to Count IV and granted her motion for a more specific pleading to Count III, granting leave to appellant to amend Count III.[1] The trial court also sustained the law firm's preliminary objections in the nature of demurrers to Counts V and VI and dismissed those counts. From this order appellant filed an appeal that has been docketed in this Court at No. 1378 Pittsburgh 1988.

Pursuant to the trial court's order, appellant filed an amended complaint consisting only of Count III, into which he had incorporated paragraphs 1 through 30 (Counts I and II) and paragraphs 35 through 42 of the original complaint. Lesko then filed preliminary objections to the amended complaint in the nature of a demurrer to Count III and a motion to strike paragraphs 22 through 30. In an order entered October 28, 1988, the trial court sustained Lesko's preliminary objections and dismissed Count III of the amended complaint. Appellant's appeal of the order was docketed in this Court at No. 1824 Pittsburgh 1988. The two appeals have been consolidated for our review.

## I. APPEALABILITY

### A.

The Judicial Code provides that this Court "shall have exclusive appellate jurisdiction of all appeals from *final*

---

1. Although the trial judge states that he granted Lesko's motion for a more specific pleading, we note, as did the trial judge, that Lesko filed a motion to strike rather than a motion for a more specific pleading. A trial court may, on its own motion, permit or require the amendment of a pleading. *Delgrosso v. Gruerio,* 255 Pa.Super. 560, 564 n. 6, 389 A.2d 119, 121 n. 6 (1978).

orders of the courts of common pleas...." Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978, 42 Pa.C.S. § 742 (emphasis added). Pursuant to the Rules of Appellate Procedure promulgated by our Supreme Court, an appeal may be taken as of right (except by the Commonwealth, which may appeal in criminal matters only in the circumstances provided by law) from any *final* order of the trial court, and such an appeal, if desired, shall be taken by filing a notice of appeal within thirty (30) days after the entry of the order from which the appeal is taken. Pa.R. A.P. 341(a), (c), 902, 903(a); *see also Sweener v. First Baptist Church of Emporium,* 516 Pa. 534, 533 A.2d 998 (1987).

By legislative and judicial mandate, therefore, this Court is required to determine in each case whether the order appealed from is final. Indeed, it is a fundamental principle of law that an appeal will lie only from a final order unless otherwise permitted by statute or rule. *Fried v. Fried,* 509 Pa. 89, 93, 501 A.2d 211, 213 (1985). The purpose of this rule is to preclude "piecemeal determinations and the consequent protraction of litigation." *Sweener v. First Baptist Church,* 516 Pa. at 538, 533 A.2d at 1000 [quoting *Sullivan v. Philadelphia,* 378 Pa. 648, 649, 107 A.2d 854, 855 (1954)]; *Fried v. Fried,* 509 Pa. at 97, 501 A.2d at 215 (quoting same). Because the question of appealability implicates the jurisdiction of the appellate court, a non-waivable matter, the failure of the parties to raise such an issue does not preclude this Court from doing so *sua sponte. Fried v. Fried,* 509 Pa. at 91, 501 A.2d at 212.

Our Supreme Court has "variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant 'out of court.'" *Id.,* 509 Pa. at 93–94, 501 A.2d at 213 [quoting *T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 337, 372 A.2d 721, 724 (1977)] (additional citations omitted). Whether an order is final and appealable is a judicial determination which cannot be made without an examination of the order's

practical ramifications. *Pennsylvania Turnpike Commission v. Atlantic Richfield Company,* 482 Pa. 615, 618, 394 A.2d 491, 493 (1978) [quoting *Bell v. Beneficial Consumer Co.,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975) ]. In making this determination, we are guided by the Supreme Court's statement that

> [a] pivotal consideration in determining whether an order is final and appealable is whether the plaintiff aggrieved by it has, for purposes of the particular action, been put "out of court" on all theories of recovery asserted against a given defendant for a given loss.

*Sweener v. First Baptist Church,* 516 Pa. at 539, 533 A.2d at 1000.

■ In the present case the trial court dismissed five counts of a six-count complaint. "As a general rule, an order dismissing some but not all counts of a multi-count complaint is interlocutory and not appealable." *Praisner v. Stocker,* 313 Pa.Super. at 337, 459 A.2d at 1258. The same is true of an order granting partial summary judgment. *Id.* With respect to appellees Lesko and the law firm, however, the finality of the orders in question is nevertheless apparent. In its order of August 23, 1988, the trial court dismissed both counts (V and VI) against the law firm, as well as the counts alleging intentional infliction of emotional distress against Burkhart (II) and Lesko (IV). In its order of October 28, 1988, the court dismissed the remaining count (III, alleging malicious prosecution) against Lesko. Therefore, appellant is "out of court" with respect to Lesko and the law firm, as all counts against them have been dismissed. As suggested by the Supreme Court's observation in *Sweener v. First Baptist Church,* quoted above, the dismissal of a complaint as to one of several defendants is a final and appealable order. *United States National Bank in Johnstown v. Johnson,* 506 Pa. 622, 629, 487 A.2d 809, 813 (1985). Accordingly, the appeals from the order of October 23, 1988 and from the August 23, 1988 order insofar as it dismissed the counts against Lesko and the law firm are properly before us.

■ With respect to the counts involving Burkhart, the situation is more complicated. Count II, alleging intentional infliction of emotional distress, has been dismissed; Count I, alleging malicious prosecution, remains. In *Praisner v. Stocker, supra,* this Court, considering the finality question in the context of an order entering summary judgment on two counts of a three-count complaint, approached the problem as follows:

> Where separate and distinct causes of action have been joined under permissive joinder standards of Pa.R.C.P. 1020(a) or Pa.R.C.P. 1044(a), the appealability of a judgment entered on one or more but not all counts must be distinguished from the situation in which separate counts have been used to state alternate theories for recovery on the same cause of action. In the former situation the summary judgment has terminated litigation upon a separate and distinct cause of action. In the latter, an order dismissing or entering judgment on one or more but not all counts of a complaint is interlocutory, for the plaintiff can, nevertheless, proceed to a determination on the underlying cause of action.... In [the latter situation] the plaintiff is not out of court when one of several counts has been dismissed, and it is procedurally preferable to delay appellate review until the entire action has been determined.

*Id.* 313 Pa.Super. at 341–42, 459 A.2d at 1260 (citations omitted).[2] In other words, if the dismissed count states a cause of action that is separate and distinct from the remaining counts, the order dismissing that count is final and appealable; if the dismissed count merely states an alternate theory of recovery, the order dismissing it is interlocutory and not appealable.

**2.** When *Praisner* was decided, Pa.R.C.P. 1020(d)(1) permitted, but did not require, the joinder of more than one cause of action, arising out of the same transaction or occurrence, in a single complaint. Subsequently, Rule 1020(d)(1) was amended so that the joinder of more than one cause of action arising out of the same transaction or occurrence is now mandatory. We conclude, however, that the change in the rule does not require a revision of the *Praisner* holding.

As noted earlier, a pivotal factor to consider in analyzing whether an order is final is whether the order has put the aggrieved plaintiff out of court "on all theories of recovery asserted against a given defendant *for a given loss.*" *Sweener v. First Baptist Church,* 516 Pa. at 539, 533 A.2d at 1000 (emphasis added).[3] *Praisner* itself emphasizes the importance of the measure of loss:

> Thus, the dismissal of a count alleging damages for breach of an express contract is not appealable if an alternate count seeking to recover *the same damages* based on quantum meruit remains undecided. Similarly, there is no final order where a count averring negligence has been dismissed but there remains undetermined a count alleging liability for a defective product under Section 402A of the Restatement (Second) of Torts.

313 Pa.Super. at 341, 459 A.2d at 1260 (citation omitted; emphasis added). Thus, a plaintiff seeking to recover monies allegedly owed for services rendered—the "given loss" —may attempt to prove that the defendant breached an express contract or, if no express contract can be proven, that compensation is owed on the basis of quantum meruit ["as much as he deserves," *Black's Law Dictionary* 1119 (5th ed. 1979)]. If the first of these theories is foreclosed by the trial court, the plaintiff is still able to seek compensation, via the second theory, for the loss suffered. Similarly, a plaintiff seeking compensation for an injury caused by a defective product may argue that the defendant was negligent or, alternatively, that the defendant was strictly liable pursuant to Section 402A of the Restatement (Second) of Torts. Should the first of these theories of recovery be dismissed, the action for damages will continue with the

---

3. In *Sweener* the Supreme Court was required to decide the finality of a summary judgment entered against two out of three defendants who subsequently participated in the trial of the third in order to determine the latter's liability. The Court held that the summary judgment constituted a final and appealable order. Although the Court's observations concerning finality were not made in response to a *Praisner*-type situation, they must nevertheless be accorded great authority, not only because they constitute the views of the Commonwealth's highest court but also because the Supreme Court has never directly addressed *Praisner.*

plaintiff relying on the second theory. In neither of these cases would the plaintiff be allowed to recover on *both* theories; in each case, the plaintiff has merely proffered alternative theories for the recovery of a given loss.

The significance of the plaintiff's loss was recently noted by this Court in *Daywalt v. Montgomery Hospital,* 393 Pa.Super. 118, 573 A.2d 1116 (1990). In that case the plaintiff had filed a two-count complaint alleging defamation and wrongful suspension, and the latter count was dismissed. The order dismissing the claim for wrongful suspension was final and appealable, this Court held, because "[t]hese claims request different relief for different harms...." *Id.,* 393 Pa.Superior Ct. at 121, 573 A.2d at 1118.

As this Court *en banc* has observed in *Garofolo v. Shah,* 400 Pa.Super. 456, 460, 583 A.2d 1205, 1207, (1990), and *Trackers Raceway, Inc. v. Comstock Agency, Inc.,* 400 Pa.Super. 408, 415–417, 583 A.2d 1180, 1184 (1990), while an analysis of the relief requested will lead to resolution of the finality issue in many cases, other cases will require the consideration of additional factors. The analysis required in such cases will be similar to that required of our courts in many analogous situations, as when, for example, we review a decree of equitable distribution in light of the eleven factors enumerated by the legislature, 23 P.S. § 401, or an award of alimony in light of the seventeen factors similarly enumerated, 23 P.S. § 501. See also *John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990) (in determining whether there is "good cause" for court-ordered blood tests under Pa.R.C.P. 4010(a), the court balances interests); *Commonwealth v. Dollman,* 518 Pa. 86, 541 A.2d 319 (1988) (in deciding whether to admit potentially inflammatory evidence, the trial court is required to balance alleged prejudicial effect against probative value); *Hutchison v. Luddy,* 398 Pa.Super. 505, 581 A.2d 578 (1990) (in deciding whether to grant a motion to seal records or proceedings under the common law approach, the court weighs factors for and against access).

Before addressing the finality of the orders appealed from in the present case, we note, finally, that additional guidance is provided by the numerous cases that have followed the rationale of *Praisner.* See, e.g., *Hineline v. Stroudsburg Electric Supply*, 384 Pa.Super. 537, 559 A.2d 566 (1989) (order dismissing counts of wrongful discharge and intentional interference with contractual relations was final, where claim for breach of fiduciary duty remained); *Danko Development Corporation v. Econocast Corporation*, 369 Pa.Super. 120, 534 A.2d 1108 (1987) (order dismissing claim based on implied warranty of habitability was not final, where claims of negligence, breach of contract, and misrepresentation remained); *Gabriel v. O'Hara*, 368 Pa. Super. 383, 534 A.2d 488 (1987) (where plaintiffs' complaint alleged breach of contract and warranty and fraudulent misrepresentation, order denying petition to add claim for violation of Unfair Trade Practices and Consumer Protection Law (UTPCPL) was final); *Hardy v. Pennock Insurance Agency*, 365 Pa.Super. 206, 529 A.2d 471 (1989) (where claim of breach of agreement to provide insurance remained, order was not final insofar as it dismissed claim for "negligent breach of contract," but was final insofar as it dismissed claims of misrepresentation, fraud, and deceit and claims based on alleged violations of Unfair Insurance Practices Act and/or UTPCPL); *Newman v. Thorn*, 359 Pa.Super. 274, 518 A.2d 1231 (1986) (order granting partial summary judgment to defendants on plaintiffs' claim for retaliatory discharge was final even though other claims, including malicious investigation of plaintiffs' private affairs, remained); *Halliday v. Beltz*, 356 Pa.Super. 375, 514 A.2d 906 (1986) (order dismissing plaintiffs' own claim for negligent infliction of emotional distress was final, even though executor could still proceed on estate's medical malpractice claim); *Post v. Mendel*, 336 Pa.Super. 467, 485 A.2d 1176 (1984), *rev'd on other grounds*, 510 Pa. 213, 507 A.2d 351 (1986) (counts of libel, involving letters to certain individuals, and slander, involving statements to other individuals, set forth separate causes of action); *Ellis v. Sherman*, 330 Pa.Super. 42, 478 A.2d 1339 (1984), *aff'd*, 512 Pa.

14, 515 A.2d 1327 (1986) (order dismissing claim for wrongful life brought on child's behalf was final, where claims for negligence and breach of contract brought on parents' behalf remained).

The finality of an order that dismisses a claim for intentional infliction of emotional distress but leaves the plaintiff free to proceed on a claim for malicious prosecution (or vice versa) is an issue that has not yet been addressed by this Court. In *Field v. Philadelphia Electric Company*, 388 Pa.Super. 400, 565 A.2d 1170 (1989), this Court held that an order dismissing some but not all of the plaintiff's claims, including those for intentional infliction of emotional distress, intentional exposure to radiation, and wrongful discharge, was final. The remaining claims were not specified, however. *Id.*, 388 Pa.Superior Ct. at 404 n. 1, 565 A.2d at 1171 n. 1.

In *Ganassi v. Buchanan Ingersoll*, 373 Pa.Super. 9, 540 A.2d 272 (1988), an order dismissing claims of defamation, libel, and invasion of privacy (false light) was held to be final, even though plaintiffs remained in court on claims of conspiracy, fraud and deceit, breach of contract, interference with prospective contractual relations, and intentional infliction of emotional distress. This Court stated without discussion that the complaint stated separate causes of action. *Id.*, 373 Pa.Superior Ct. at 12 n. 2, 540 A.2d at 274 n. 2.

In *Winterhalter v. West Penn Power Company*, 355 Pa.Super. 17, 512 A.2d 1187 (1986), the plaintiffs filed a complaint demanding compensation for damages to their property by the defendant's employees and, on behalf of their minor daughter, for the employees' intentional infliction of emotional distress during the same incident. This Court held, again without discussion, that the complaint stated separate causes of action and that the order of the trial court striking plaintiffs' allegation of intentional infliction of emotional distress was therefore final. *Id.*, 355 Pa.Superior Ct. at 21 n. 3, 512 A.2d at 1189 n. 3.

In *Cloverleaf Development, Inc. v. Horizon Financial F.A.*, 347 Pa.Super. 75, 500 A.2d 163 (1985), the trial court dismissed plaintiffs' claims of wrongful withholding of

funds, wrongful interference in negotiations, and intentional infliction of emotional distress, leaving them in court on their claim for breach of contract. This Court held that the order was not final insofar as it dismissed the first of these claims but was final insofar as it dismissed the second and third, which stated separate causes of action. *Id.*, 347 Pa.Superior Ct. at 81–82, 85, 500 A.2d at 167, 168. The alleged acts of the defendants which formed the basis of the wrongful interference claim were not the same as those upon which plaintiffs based their claim of intentional infliction of emotional distress.

There is even less case law discussing malicious prosecution in a *Praisner* context. In *Bell v. City of Philadelphia*, 341 Pa.Super. 534, 491 A.2d 1386 (1985), the trial court had dismissed plaintiffs' claim for malicious prosecution on the ground that it was barred by the statute of limitations. A claim for damages resulting from an alleged assault and battery remained in the case. This Court held that the trial court's order was a final determination of the cause of action for malicious prosecution. *Id.*, 341 Pa.Superior Ct. at 541 n. 4, 491 A.2d 1389 n. 4, 491 A.2d 1389 n. 4. In addition, in *Robinson v. Robinson*, 362 Pa.Super. 568, 525 A.2d 367 (1987), *appeal dismissed*, 518 Pa. 63, 540 A.2d 529 (1988), an order denying the plaintiff's petition to amend a complaint to include a count for wrongful use of civil proceedings, a tort similar to malicious prosecution, was held to be final, where the existing counts were for conversion and defamation. *Id.*, 362 Pa.Superior Ct. at 573, 525 A.2d at 369–70.

## B.

█ We turn, then, to the facts of the present case. In order to prevail on a claim of malicious prosecution, the plaintiff must show that the defendant maliciously instituted proceedings against the plaintiff, that the defendant did not have probable cause to institute the proceedings, and that the proceedings terminated in favor of the plaintiff. *Kelley v. Local Union 249*, 518 Pa. 517, 520–21, 544 A.2d 940, 941 (1988). In Count I of his complaint, appellant asserted that Burkhart caused a criminal complaint to be

issued against him by making accusations that were false and unsupported by probable cause, that she did so maliciously and with the intent to cause him harm and to influence other litigation, and that the proceedings terminated in his favor. He also maintained that she "has, in the past, engaged in similar types of conduct and perceivably will continue to engage in said conduct in the future." As a result of Burkhart's actions, appellant alleged, he suffered humiliation, embarrassment, incarceration, severe emotional and physical distress, severe damage to his business reputation and his reputation in the community, and great financial expense in the form of health care, both physical and mental, and litigation costs. Burkhart's actions, appellant asserted, "constitute[d] outrageous conduct." He made a demand for damages in excess of $25,000.00, plus punitive damages and interest.

To prevail on a claim of intentional infliction of emotional distress, such as that raised in Count II of appellant's complaint, the plaintiff must prove that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress. Restatement (Second) of Torts § 46. Comment d of § 46 provides guidance as to what constitutes extreme and outrageous conduct:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, comment d, quoted in *Field v. Philadelphia Electric Company,* 388 Pa.Super. at 428, 565 A.2d at 1183–84. It is for the court to determine initially whether the defendant's conduct can be regarded as so extreme and outrageous as to permit recovery. *Dawson v. Zayre Department Stores,* 346 Pa.Super. 357, 359, 499 A.2d 648, 649 (1985). Where reasonable persons may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability. Restatement (Second) of Torts § 46, comment h. Although our Supreme Court has "[left] to another day the question of the viability of section 46 in this Commonwealth," *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 185, 527 A.2d 988, 989 (1987), this Court has recognized the existence of a cause of action based on intentional infliction of emotional distress, *Field v. Philadelphia Electric Company, supra; Bartanus v. Lis,* 332 Pa.Super. 48, 480 A.2d 1178 (1984).[4]

█ As the basis for his claim of intentional infliction of emotional distress against Burkhart, set forth in Count II of the complaint, appellant incorporated the allegations concerning malicious prosecution stated in Count I and averred that Burkhart had also encouraged unknown persons to telephone his friends and neighbors and accuse him of other unspecified crimes. Burkhart's intent, he maintained, was to cause him emotional distress, inconvenience, embarrassment, humiliation, and injury to his business reputation. Appellant asserted that as a result of Burkhart's conduct he suffered sleeplessness, nervousness, irritability, nausea, and severe emotional distress, all of which necessitated continuing treatment by health care professionals. As in

4. In *Ford v. Isdaner,* 374 Pa.Super. 40, 542 A.2d 137 (1988), *alloc. denied,* 520 Pa. 617, 554 A.2d 509 (1988), this Court interpreted *Kazatsky* as making clear "that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania." *Id.,* 374 Pa.Superior Ct. at 44, 542 A.2d at 139. However, since, as the Court noted, the facts of the case did not support a claim of intentional infliction of emotional distress in any event, the Court's interpretation of *Kazatsky* is dictum and therefore not binding precedent.

Count I, he requested damages in the amount of $25,000.00, plus punitive damages and interest.

In determining whether the portion of the August 23, 1988 order dismissing Count II was final and appealable, we focus upon the loss or losses for which appellant, in Counts I and II, sought recovery. Because appellant's allegations in this regard, as well as in regard to Burkhart's actions, are general in nature, we are unable to perceive any significant difference between the losses described in Count I and those described in Count II. To the contrary, it is apparent that the harm alleged in both counts is substantially the same, namely, humiliation and embarrassment, injury to reputation, and physical and emotional distress. Moreover, appellant's reference in Count I to "similar types of conduct" that Burkhart had engaged in in the past and was likely to repeat in the future could reasonably be read to include the conduct complained of in Count II. This interpretation is strengthened by appellant's reference in Count I to the "outrageous" nature of Burkhart's conduct. On the basis of the facts discernible in this case, therefore, we conclude that appellant has not requested "different relief for different harms" but has instead sought recovery for "a given loss." Accordingly, we hold that the trial court's order of August 23, 1988, insofar as it dismissed Count II of appellant's complaint, was interlocutory rather than final and that appellant's appeal therefrom must be quashed.

## II. COUNTS III AND IV: APPELLEE LESKO

We turn next to the merits of appellant's appeal from the orders dismissing Counts III through VI of his complaint. In doing so, we are mindful of our scope of review as set forth in *Field v. Philadelphia Electric Company, supra:*

> When preliminary objections in the nature of a demurrer are filed, we must accept as true all the well-pleaded material facts set forth in the complaint and all reasonable inferences deducible from those facts. Accepting these facts and inferences, we then determine whether the pleader has failed to state a claim for which relief

may be granted, and we will affirm the grant of a demurrer only if there is certainty that no recovery is possible. All doubts are resolved in favor of the pleader. *Id.* 388 Pa.Super. at 405, 565 A.2d at 1172 (footnote and citations omitted).

■ Appellant argues, first, that the trial court erred in sustaining Lesko's preliminary objection in the nature of a demurrer to Count III, which alleged malicious prosecution.[5] In his amended complaint, appellant makes broad allegations that Lesko provided information to Officer Blodgett, the police officer who filed the criminal complaint. Appellant claims that Lesko knew, or in the exercise of reasonable diligence should have known, that the information which she provided was false and that her actions were done "solely for her benefit and for the anticipated beneficial effect on the pending custody proceedings and not with any reasonable belief that any criminal conduct had actually occurred." Appellant specifically alleges that Lesko falsely informed Officer Blodgett that appellee Burkhart was to testify in the impending custody proceeding and that appellant had sexually molested his daughter.

Even accepting as true the allegation that Lesko made these statements to Officer Blodgett, we agree with the trial court that appellant has not pled sufficient facts to support a cause of action for malicious prosecution against Lesko. In order to prevail in an action for malicious prosecution, as noted earlier, the plaintiff must show, *inter alia,* that the defendant instituted the criminal proceedings against the plaintiff. Appellant was arrested for intimidation of a witness, simple assault, terroristic threats, and harassment. The allegations of Count III do not suggest that Lesko initiated these proceedings against appellant or that she provided information concerning the incident be-

5. Although the trial court suggests that appellant's statement of matters complained of on appeal is inadequate with respect to Count III, the statement does not defeat our ability to conduct a meaningful appellate review. Accordingly, appellant has not waived his challenge to the dismissal of Count III. *Commonwealth v. Van Jordan,* 310 Pa.Super. 516, 524, 456 A.2d 1055, 1059 (1983).

tween appellant and Burkhart upon which the criminal charges were based. The only connection between the criminal charges against appellant and the allegedly false statements made by Lesko is Lesko's alleged verification of Ann Burkhart's status as a prospective witness. As the trial court noted, the only criminal conduct that Lesko allegedly attributed to appellant was the sexual molestation of his daughter; appellant has not been charged with such an offense. We conclude, therefore, that the trial court did not err in dismissing Count III of appellant's complaint.

In Count IV of his complaint appellant attempts to state a claim for intentional infliction of emotional distress based on the actions attributed to Lesko in Count III. Appellant cannot recover on such a claim, as noted earlier, unless the conduct complained of was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." The conduct attributed to Lesko—making accusations to a police officer that she knew or reasonably should have known were false—was not of such a character. Accordingly, we affirm the trial court's dismissal of Count IV.

### III. COUNTS V AND VI: APPELLEE KRATZENBERG, SHIELDS AND LESKO, P.C.

In Count V of his complaint, appellant alleges that Kratzenberg, Shields and Lesko, P.C., Lesko's law firm, is liable for malicious prosecution pursuant to the doctrine of respondeat superior. "Where the master is joined with his servant in an action based wholly on the servant's negligence or misconduct, the master cannot be held liable unless there is a cause of action against the servant...." *Skalos v. Higgins,* 303 Pa.Super. 107, 113, 449 A.2d 601, 603 (1982); see also *Mamalis v. Atlas Van Lines, Inc.,* 364 Pa.Super. 360, 528 A.2d 198 (1987), *aff'd,* 522 Pa. 214, 560 A.2d 1380 (1989). Since, as we have found, appellant has no cause of action for malicious prosecution against Lesko, it

necessarily follows that he has none against the law firm. Accordingly, the trial court did not err in dismissing Count V of the complaint.

In Count VI, appellant alleges that the law firm was negligent in failing to train, supervise, and prevent unethical and irresponsible conduct by Lesko. Assuming for the sake of argument that appellant has alleged sufficient facts to show that the law firm owed a duty to him and breached that duty, we have already determined that Lesko's alleged conduct did not contribute to the commencement of criminal proceedings against appellant. Therefore, as there is no causal relationship between the firm's allegedly negligent supervision and the harm suffered by appellant, the trial court did not err in dismissing Count VI of appellant's complaint.

In the appeal at No. 1378, the appeal from the portion of the trial court's order dismissing Count II is quashed. The order is affirmed insofar as it dismisses Counts IV, V, and VI. In the appeal at No. 1824, the order of the trial court dismissing Count III is affirmed. Jurisdiction is relinquished.

BECK, J., files a concurring opinion.

FORD ELLIOTT, J., concurs in the result of the Majority Opinion.

BECK, Judge, concurring:

I join the majority's holding that the orders appealed from are final and appealable insofar as they put appellant out of court on all claims for relief asserted against Deborah Lesko individually and against Kratzenberg, Shields and Lesko, P.C., Lesko's law firm. I also join in the majority's affirmance of the dismissal of appellant's complaint against those defendants. As to the balance of the majority opinion, I concur in the result only. Although I agree with the majority's determination that the orders appealed from are not final and appealable insofar as they dismiss some but not all of appellant's claims for relief

against the remaining defendant, Ann Burkhart, I reach that conclusion by a far different route.

The trial court dismissed only one of appellant's counts naming Burkhart as a defendant. This was the count alleging intentional infliction of emotional distress. The remaining count against Burkhart, alleging malicious prosecution, was not dismissed. The majority concludes that the dismissal of the intentional infliction of emotional distress count is not a final appealable order because it did not dismiss a separate cause of action under *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983). I, on the other hand, would not struggle to justify this result under *Praisner*, but would quash the appeal simply because the order appealed from did not put plaintiff out of court on all of his claims for relief against this defendant.

As I have more fully discussed in my dissenting opinion in *Trackers Raceway, Inc. v. Comstock*, 400 Pa.Super. 432, 583 A.2d 1193 (1990) (en banc), a companion to this case, the proper answer to the *Praisner* dilemma is to overrule *Praisner* and hold that an order dismissing some but not all of the claims for relief set forth in a complaint against a particular defendant is interlocutory. This solution will remove the element of uncertainty that has plagued both courts and litigants since *Praisner* was decided and will foster the policy of avoiding piecemeal appeals.

Although my opinion filed in the *Trackers* case constitutes a full statement of my position on this issue, several aspects of the majority's opinion in this case require a further, although brief, response.

The majority enunciates a test for determining when a separate cause of action has been dismissed. The test appears to equate a cause of action with a claim for relief for a given loss.[1] As otherwise stated in the majority

---

1. The majority takes this language from the decision of the Supreme Court in *Sweener v. First Baptist Church of Emporium*, 516 Pa. 534, 533 A.2d 998 (1987), despite the fact that *Sweener* was not a case involving the dismissal of some but not all counts of a multi-count complaint and contains no comment by the Supreme Court on that issue.

opinion, the test is whether the dismissed count(s) sought "different relief for a different harm". Although the majority determines that this is the key to ascertaining whether a partial dismissal order is final, it concedes at the outset that the test will not work in every case, stating that in some cases additional factors must be considered. Unfortunately, the majority fails to specify what those factors are.[2] Rather, the majority indicates that in such cases the analysis will be similar to that undertaken in other cases where a consideration of numerous factors is required, such as cases involving review of equitable distribution orders, and adds that the analysis will be aided by reference to prior cases decided under *Praisner*.

I see a clear distinction between cases such as those involving a review of an equitable distribution order in light of the statutorily mandated factors and a case such as this, where we are asked to perform an analysis of appealability in light of "additional factors" which are not identified. I also do not view our prior decisions in *Praisner* cases as providing many clues as to what those relevant factors might be. As my dissent in *Trackers* demonstrates, there is great confusion and inconsistency among those cases. The majority itself demonstrates this fact when it turns to an analysis of this case. The majority begins by cataloging those cases where this court has previously dealt with the appealability of orders that dismissed only a portion of a complaint that included claims for intentional infliction of emotional distress or malicious prosecution. As the majority's own survey reveals, these cases do not provide principles to guide our analysis in this case. Most of them do not even discuss the issue, but simply state their conclusion.

The majority's attempt to fashion a reliable and clear *Praisner* method of analysis is laudable but not, in my view, successful. The question of whether a dismissed count sought recovery for a separate given loss is no more

**2.** The majority opinion in *Trackers* suffers from the same defect. While stating that additional factors may be relevant to a determination of appealability under *Praisner,* those factors are not specified.

easily or consistently answered than is the original question posed by *Praisner*, i.e., did the dismissed count plead a separate cause of action. This is readily proven by comparing the majority's analysis in this case to that found in the dissenting opinion to *Schuetz v. Goldberg*, 392 Pa.Super. 448, 573 A.2d 549 (1989) (Olszewski, J., dissenting), in which the same test for appealability is purportedly applied, yet the analysis is materially different.[3]

In this case, the majority concludes that the order dismissing the intentional infliction count did not dismiss a claim for a given loss that was separate or different from that asserted in the remaining malicious prosecution count. This conclusion is based on the majority's perception that both the allegations of wrongdoing by defendant, i.e., the facts alleged, in each count and the harm to plaintiff alleged in each count are overlapping. Thus, plaintiff is found to have sought one form of relief for one alleged loss arising from one set of facts instead of different relief for different harms.

In the dissenting opinion in *Schuetz*, on the other hand, although the same test for *Praisner* appealability is stated, the analysis is different. In *Schuetz*, plaintiff had sued several defendants for medical malpractice and negligent infliction of emotional distress. Both counts arose out of the same facts—the single allegation of wrongdoing was inadequate medical treatment. The trial court dismissed the count pleading negligent infliction of emotional distress. This court quashed the appeal without opinion. In a published dissent, Judge Olszewski opined that the dismissal put plaintiff out of court on a claim for different relief for a different harm because the relief sought for medical malpractice was for physical injury and the relief sought for negligent infliction was for emotional distress. Judge Olszewski would have so held despite the fact that both types of

3. Although I recognize that a dissent to a panel decision of this court has no binding precedential effect on this case, an en banc decision, nevertheless I discuss the dissent in *Schuetz* to illustrate that the test for *Praisner* appealability announced by the majority, which was also used in *Schuetz*, is subject to widely varying applications.

alleged harm arose out of the selfsame acts by defendants. He specifically rejected the idea that whether a dismissed count sought "different relief for different harms" depended on whether the facts underlying each count were different.

A similar inconsistency in analysis can be found in a comparison of this case and the majority opinion in *Trackers*. In *Trackers*, all five counts of the complaint arose out of the selfsame allegations of wrongdoing by defendants. Plaintiff alleged improper placement of insurance giving rise to both common law and statutory theories of relief and resulting in loss of premiums paid and business losses. All losses were equally alleged in each count. Yet this court decided that the dismissal of the two counts based on statutory violations is a final order, despite the fact that the losses alleged, the harms suffered by plaintiff, are identical in every count of the complaint. The only difference between the statutory counts and the common law counts was that in one of the statutory counts, treble damages were sought. Thus, the relief was different, but the loss or harm alleged giving rise to that right to relief was the same. In contrast, here the majority holds that the order appealed from is interlocutory because the losses alleged, the harms suffered by plaintiff, namely, "humiliation, embarrassment, injury to reputation, and physical and emotional distress," (at p. 1188), are the same in both the dismissed count for intentional infliction and the remaining count for malicious prosecution.

How is the determination of what is different relief for a different harm to be made? Are both different relief and a different harm required, or is it sufficient to seek materially different types of relief, despite the same allegations of wrongdoing resulting in one general loss? Moreover, how does one decide whether the relief sought in one count is cumulative to the relief sought in another? How, for example, did the dissent in *Schuetz* conclude that plaintiff's damages for negligent infliction of emotional distress were cumulative to her damages recoverable for professional

negligence? Were not all the legally caused damages flowing to plaintiff from the defendant's alleged professional negligence recoverable on that count, even without pleading and proof of negligent infliction of emotional distress? Could not the plaintiff have recovered for all of her suffering, i.e., emotional distress, that flowed from the malpractice in her professional negligence claim, which had not been dismissed? What precedent guides us on this issue? These are questions that should not be left open to be resolved in the same inconsistent manner in which we have handled the question of what is a separate cause of action in our prior *Praisner* decisions.

Thus, for the reasons stated here and in my dissenting opinion in *Trackers*, I would overrule *Praisner* and would quash the instant appeal.